## Julius A. Palmer, administrator, *vs.* Paran Stevens.

Where an equitable and effectual decree can be made against the defendant to a bill in equity, the failure to join as defendants persons who appear from the bill to reside out of the jurisdiction, cannot be taken advantage of by plea, but only, if at all, by demurrer.
The defendant induced A., who was his partner, to sell the firm property, at an inadequate price, to himself and B., C. and D. Payment was made in the notes of B., C. and D. A.'s administrator brought a bill in equity against the defendant to settle the affairs of the old firm. The bill alleged that the sale had been induced by the defendant's fraud, and sought to set it aside so far as the price had been fixed by agreement, and to charge the defendant with the fair value of the property. The bill did not allege any complicity in the fraud, or knowledge thereof, on the part of B., C. and D., and did not pray any relief against them. *Held*, that B., C. and D. were not necessary parties.

Bill in equity by the administrator of James E. P. Stevens. The bill alleged that said James was the nephew of the defendant, and had been, for many years prior to his decease, connected with the defendant, who was much older than said James, under such circumstances as to subject him constantly and materially to the defendant's influence and control; that in 1860 said James and the defendant entered into a partnership for the purpose and business of conducting the Continental Hotel in Philadelphia that thereafter, until about October 1862, they

continued to conduct and carry on that hotel, and derived there-from large profits, and the same became well and favorably known, and sustained a high reputation throughout the United States, so that a large number of persons constantly came to the hotel, and the interest of said James in the good will and the lease thereof, and the property used in carrying on the same, became and were not less than $500,000 in value; that about and before that time the labors of the said James began to have an injurious effect upon his health, and in said October brought on an attack of epilepsy, soon after which he gave up all active attention to business, and, becoming constantly weaker in mind, he was finally placed in an insane asylum, where he died; that, during the larger part of the period from and after, if not before, the month of October 1862, he was much weakened in mind and unable to transact business properly ; that while he was in this condition, it was proposed to him by the defendant that his interest in the hotel, and in the lease and good will thereof, and in the other property held in partnership, should be sold to the defendant, and their partnership dissolved; that, on or about the 16th day of March 1863, said James signed an instrument purporting to sell and convey all the interest of said James in said hotel and lease, and in the partnership property, to the defendant, for $141,590.57 ; that said James was at the time of such signing of unsound mind and incompetent to execute such an instrument, and did not fully understand or appreciate the nature of his acts or the real value of the property thereby conveyed, which was well known to the defendant; that the said James acted without counsel, advice or assistance, except that of the defendant, and was influenced so to do by the undue influence and control of the defendant; that the property thereby purporting to be conveyed to the defendant was of the value of $500,000 ; that, after the signing of said instrument, the defendant took possession of the property thereby purporting to be conveyed, and entered into a new partnership with Junius F. Kingsley, Caleb W. Spofford and James G. Wildman, all of said Philadelphia, having previously agreed with them so to do in the keeping and carrying on of said hotel, and took from them

certain promissory notes for the sum of $85,037.04, on the payment of which it was understood and agreed between them and the defendant that the partnership property should be owned by the parties in the following proportions, namely, the defendant ten sixteenths, Kingsley four sixteenths, Spofford one sixteenth, and Wildman one sixteenth; that no security whatever was given to said James, even for the sum aforesaid of $141,590.57, nor was the whole thereof ever paid to him in any form; but that all that he received therefor were the said promissory notes; that no security for the payment of these notes, or any of them, was given to the said James; and that Kingsley, Spofford and Wildman were young men without much property or means to pay the notes.

The bill further alleged that the plaintiff had no knowledge and no certain means of knowledge as to what sum said James, acting as aforesaid in conveying his interest in said partnership property and business to his uncle and senior copartner, without counsel and under the undue influence of the defendant, and while of unsound mind, believed and supposed was to be paid for such pretended sale and transfer, but that he was informed, and therefore averred, that said sum of $85,037.04 was in fact agreed and understood by said James to be agreed to be paid, and the said notes of said Kingsley, Spofford and Wildman, for the total sum of $85,037.04, were given for their share of a sum to be paid to said James for his interest in the good will and lease of said hotel, or as a bonus for the advantage and profit to be derived from the established position and reputation thereof, and the right to occupy the same for that purpose; and did not include, and was not intended to include, compensation for the interest of said James in the furniture, groceries, wines, liquors, shares in the Continental Hotel Company owned by said James and the defendant, or for other partnership property and assets of said firm; and that said James understoood, believed and expected, and supposed it was agreed by the defendant, that the defendant should give some guaranty, agreement or security for the payment of said notes, and should also pay to said James a further sum as and for the defendant's share, as a mem-

ber of the new firm, of the bonus aforesaid, of which the remainder was to be paid by said Kingsley, Spofford and Wildman, and that the said James should receive said sum of $141,590.57 for his share of the other partnership property, namely, said furniture, wines, liquors, provisions, groceries, shares and other property; and that said James and the defendant owned as copartners, (besides the said good will and lease,) wines, liquors, provisions, groceries, shares in the Continental Hotel Company, and other property, of the value of $600,000, in which the interest of said James was not less than $300,000; but that said James never did receive anything except said notes for the total principal sum of $85,037.04, unless by deduction of pretended claims of the defendant, for all his interest in the good will and lease and in all the property and assets of the copartnership, which were conveyed to the defendant by said instrument, dated March 16, 1863; and that the defendant, at and upon the execution of said instrument, took possession of the property thereby conveyed, and that thereupon and thereafter, and ever since, he and said Kingsley, Spofford and Wildman have occupied, conducted and carried on said hotel.

The bill prayed that said instrument might be set aside, so far as the same purported to ascertain and fix the value of the interest of the said James, and of what justly and equitably belonged to him upon a dissolution of the firm, which the bill admitted was necessary by reason of the want of health and of mental capacity of the said James; and that an account might be taken of all transactions between said James and the defendant as copartners; and of the amount, character and value of the assets and property owned by them as copartners, including their interest in said hotel, lease, good will, furniture, groceries, wines, liquors, and all other partnership·property; and that in taking said account the defendant might be charged with one half of the full value thereof and one half of all that was paid or was to be paid therefor by him or by Kingsley, Spofford and Wildman, and with one half of all benefit, profit or advantage obtained by him in receiving, selling or disposing of the assets

or property of the partnership; that the balance which might be found due on taking said account might be forthwith paid by the defendant to the plaintiff, the plaintiff being ready to make all just allowances to said defendant, including all sums received on the said notes; and for further relief.

The defendant filed a plea, in which, to so much and such portions of the bill as prayed for an account and relief, he denied that the said James Stevens sold his interest in the partnership between the defendant and said James to the defendant, as alleged in the bill; but alleged that the said James sold one half of his interest in said copartnership to Kingsley, one eighth of said interest to Spofford, one eighth of said interest to Wildman, and one fourth of said interest to the defendant, all of whom were of Philadelphia, in the State of Pennsylvania; and that the said Kingsley, Spofford and Wildman ought to be, but were not, made parties to the bill, and therefore he prayed the judgment of the court whether he should be compelled to make any further answer to the bill.

The depositions of Kingsley, Spofford and Wildman were taken; and the case was reserved by *Hoar*, J., on the bill and plea, and on these depositions, for the determination of the full court.

*B. R. Curtis & G. S. Hale*, for the plaintiff.

*B. F. Thomas & H. C. Hutchins*, for the defendant.

Foster, J. The question raised by the plea to this bill in equity is, whether Kingsley, Spofford and Wildman ought to be made parties defendant in the cause. The plea alleges that they are all of Philadelphia; but that the sale of the copartnership property, which the bill aims partially to set aside, was made to them and Paran Stevens, the defendant, jointly. The general principle of equity is, that all persons materially interested in the subject of the suit should be made parties, either as plaintiffs or defendants, in order that all should be brought before the court whose presence is necessary to ena ble it to do complete justice. Where any are absent from the jurisdiction, who, if within it, would be necessary parties defendant, their presence will ordinarily be dispensed with, pro-

vided an equitable and effectual decree can be made against those who have been served with process.

The former English practice was, to charge in the bill the fact of the absence from the realm of any who otherwise ought to have been joined as defendants, and to pray that they might be served with process if they came within the jurisdiction. Under the modern English system this strictness is not required, and it seems to be sufficient if the excuse for not making the absent persons parties defendant appears on the face of the bill. 1 Dan. Ch. Pract. 175. In *Towle* v. *Pierce*, 12 Met. 329, which was a bill in equity to settle partnership accounts, a demurrer for the nonjoinder of copartners without the jurisdiction was overruled, where their absence was alleged, and the bill further averred that they had received their full share of the partnership effects. No doubt, in that case, the partners not joined must have been, if within the Commonwealth. In *Pingree* v. *Coffin*, 12 Gray, 288, 304, the earlier English rule was stated to be well settled, namely, that necessary parties to a bill must be inserted, though nonresidents, that they may be made answerable if they come within the jurisdiction ; and it was said that the omission to make them parties would be good ground of demurrer. But the point was not in that case decided. Nor do we feel called upon now to determine which practice is the more regular ; because we are satisfied that the objection is a merely formal one, which should be taken by demurrer, specially pointing out the defect ; and that a plea for want of parties defendant ought not to be allowed, where it appears upon the bill that the parties not joined as defendants are beyond the jurisdiction. Certainly there can be no ground for contending that, if one of a number, who have jointly committed a fraud, is brought before a court of equity, relief against him is to be denied to the injured party because the others, equally guilty, cannot be made amenable to the process of the court.

But in the present instance the plea must be adjudged bad upon more general considerations, affecting the merits of the controversy. The bill is brought for a settlement of the affairs of a copartnership of which the deceased, whom the plaintiff

represents, and the defendant were the only members. As incidental thereto, it charges a fraud alleged to have been committed by Paran Stevens upon his nephew, and asks to have the sale of the partnership property set aside, so far as the agreed price is concerned. There is no allegation that Kingsley, Spofford and Wildman were in any respect implicated in the fraud, or aware that any had been committed. If it be true that one was practised by Paran Stevens alone, then no such decree as the bill prays for ought to be made against the others, if they were before the court. The party alone guilty should be alone responsible. The fiduciary relation between Paran Stevens and his nephew and copartner might render the measure of his duty, in their dealings, very different from any that the law would impose on the other three purchasers, in a transaction with one who was a stranger to them. The case may be shortly stated thus: One partner fraudulently induces his associate to sell the firm property, at an inadequate price, to himself, and others who do not participate in the fraud. Payment is made to the retiring member in the notes of the incoming members of the new firm. If they are innocent, and the old copartner alone has been guilty of a fraud, they are not necessary parties to a bill brought to settle all the affairs of the old firm, and, as incidental to such an adjustment, to set aside the sale so far as the price has been fixed by agreement, and to charge the defendant partner with the fair value of the property.

*Plea adjudged bad; defendant to answer the bill.*