## MARCH SESSION 1872, IN BOSTON.

### [CONTINUED FROM VOL. CIX.]

———

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,
Hon. JAMES D. COLT,   } Justices.
Hon. SETH AMES,
Hon. MARCUS MORTON,

———

## SUFFOLK COUNTY.

### FLORENCE SEWING MACHINE COMPANY vs. GROVER AND BAKER SEWING MACHINE COMPANY.

A bill in equity against the X. Company, a domestic corporation, alleged that the defendants, with the Y. Company and the Z. Company, foreign corporations, being owners of certain patents, licensed the plaintiffs to use said patents in sewing machines, on payment of a royalty to a receiver appointed by the companies, and agreed that no license should be given to other persons to use said patents in drop-feed sewing machines for a less royalty, without a corresponding reduction in the royalty paid by the plaintiffs, and that said companies might terminate the license, upon thirty days' notice, for breach of any of the agreements therein contained, or upon the machines manufactured by the plaintiffs falling below a certain number every quarter; that the companies subsequently licensed another person to use the patents in machines which were drop-feed sewing machines, for a less royalty; and that the plaintiffs thereupon objected to pay the larger royalty, but the companies threatened that unless the plaintiffs continued to pay

the larger royalty, they would give notice to terminate the license and publish that the plaintiffs had no right to use the patents. The prayer was, among other matters, that the defendants might be enjoined from giving notice to terminate the license. *Held,* that the bill was not demurrable for failure to join the Y. and Z. Companies, or the receiver, as parties, and showed a case in which the court would give relief by injunction.

The X. Company, a domestic corporation, and the Y. Company, a foreign corporation, gave a license to A. B. to use a patent. In a suit in this state by A. B. against the X. Company, the company was enjoined from giving notice to terminate the license or from collecting royalties thereunder. A. B. also began a similar suit in a United States court in another state against the Y. Company, and paid into that court a fund to cover such royalties as the court might find due. The X. Company joined in a petition with the Y. Company to the United States court for the payment of the fund to them, which the court refused. A. B. did not complain of this as a violation of the injunction. The X. Company afterwards assigned all its interest in the fund to the Y. Company, for the purpose of aiding the latter to get possession of the fund on a cross-bill in the United States court. *Held,* that this was a violation of the injunction, of which A. B. had a right to complain.

A motion to dissolve or modify a preliminary injunction made more than a year after the injunction was granted, and after the cause has been brought to issue upon the merits, will not be allowed, if unsupported by proof of any new or special circumstances.

BILL IN EQUITY, filed January 5, 1870, by the Florence Sewing Machine Company against the Grover & Baker Sewing Machine Company, both being corporations established under the laws of this Commonwealth, the plaintiffs at Northampton and the defendants at Boston.

The bill alleged that on and ever since February 20, 1868, the plaintiffs have been manufacturing sewing machines for sale, and selling them in the United States and Europe, and employing a large capital in the business, invested part in land and buildings and part in stock, tools and machinery ; that the requirements of the business of selling sewing machines are such that retailers of machines are obliged to invest a large amount of capital in machines and in notes and obligations of purchasers ; and that any interruption of the sale of the machines manufactured by the plaintiffs, arising from fear of the public that they were made or sold in violation of rights secured to others by letters patent of the United States, would cause great injury, not only to the plaintiffs, but also to a large number of persons who have purchased machines from the plaintiffs for the purpose of selling again.

It further alleged that on February 20, 1868, and ever since, the defendants, with the Wheeler & Wilson Manufacturing Com-

pany, a corporation established at Bridgeport in Connecticut, under the laws of the State of Connecticut, and the Singer Manufacturing Company, a corporation established at the city of New York, under the laws of the State of New York, have owned and controlled, either jointly or separately, and holding either the legal title or the beneficial interest therein, certain letters patent of the United States, for inventions of improvements in sewing machines, and did by a written license under that date, a copy of which was annexed to the bill, in consideration of a patent rent therein reserved, and of the plaintiffs' covenants therein, severally authorize the plaintiffs to manufacture, use and vend for use, the inventions contained and described in said letters patent so far as they are contained in the sewing machines heretofore or now manufactured by the plaintiffs, and did by said license agree with the plaintiffs that no other license for a drop-feed shuttle sewing machine, using two threads, should after the execution of said license be granted by the licensors, under those patents, at a less patent rent per machine than that reserved in said license, without a corresponding reduction in the said rent so reserved; that the patent rent reserved in said license was five dollars for each machine made and sold for use in the United States, and two dollars for each machine exported; that the licensors therein reserved the right, at their option, to terminate the license, upon thirty days' written notice thereof, for breach of any of the agreements therein contained on the part of the plaintiffs, or in case the number of machines manufactured and paid for by the plaintiffs should fall short of two hundred and fifty per quarter; and agreed that otherwise the license should remain in force until November 12, 1871, and as much longer as the plaintiffs should elect to continue it; that the plaintiffs therein agreed to render to the licensors or such person as they should appoint to receive the same, quarter yearly from January 1, 1868, a true and full account in writing of all sewing machines made or sold by the plaintiffs during each quarter successively while said license should continue, said returns to contain the number of machines made or sold and the dates of sale; and that the plaintiffs further agreed therein, on or before the tenth days of July, October, January and April

of each successive year, to pay the licensors, or their duly au-
thorized receiver, the said patent rent for each and every sew-
ing machine which should have been made or sold by the plain-
tiffs during the last preceding quarter year, and not before been
paid for.

It further alleged that the plaintiffs made all the returns called
for by the license, and paid a patent rent or license fee to the
licensors, through George Gifford, their receiver named in the
license, for all machines made or sold under the license prior to
October 1, 1869, of five dollars for each sewing machine not ex-
ported, and two dollars for each machine exported, and had in all
other respects done and performed all the things incumbent on
them under the license; that the licensors, combining and confed-
erating together for the purpose of defrauding the plaintiffs, did
on October 1, 1868, by their license in writing, a copy of which
was annexed to the bill, in consideration of $20,000, authorize
and license the Davis Sewing Machine Company of Watertown
in the State of New York, to manufacture, use and vend for use
said patents in machines which were drop-feed shuttle sewing
machines, using two threads, not exceeding 50,000 in number;
that ever since October 1, 1868, the Davis Sewing Machine Com-
pany, under and by virtue of the license to them, have sold said
sewing machines in competition with the plaintiffs, and to the
great detriment and injury of the plaintiffs in the prosecution of
their business; that the licensors, intending to defraud the plain-
tiffs, carefully concealed from them the terms of their license to
the Davis Sewing Machine Company, and the plaintiffs could not
obtain any information in relation thereto until some time in No-
vember 1869.

It further alleged that, in accordance with the license to the
plaintiffs, they were entitled to have the patent rent or license fee
under said license reduced to forty cents for each machine made
or sold by them under the license after October 1, 1868, by rea-
son of the license given to the Davis Sewing Machine Company
to make and sell 50,000 drop-feed shuttle sewing machines, using
two threads, for and in consideration of the license fee of $20,000;
that, as patent rent under the license to the plaintiffs on machines

made and sold since October 1, 1868, the plaintiffs have paid to the licensors through their receiver at the rate of five dollars for each machine not exported, and at the rate of two dollars for each machine exported, the sum of $63,912, as patent rent on 13,211 machines ; whereas the licensors were entitled under the license to the plaintiffs, as modified by the license to the Davis Sewing Machine Company, to receive as patent rent the sum of forty cents only on each of said machines, amounting in all to the sum of $5284.40 ; that in November 1869, the plaintiffs paid to the receiver the sum of $19,758, which was claimed by the licensors to be due under the license as patent rent or license fees on machines made and sold in the quarter year ending on September 30, 1869; and that the plaintiffs paid said sum, believing and protesting that the same was not due nor owing under said license, and because the licensors threatened that unless the same were paid they would give notice of the termination of the license, and publish abroad the statement that the same was terminated and the rights of the plaintiffs thereunder forfeited ; that the licensors asserted that the plaintiffs had paid only the sums due from them under the license, and intending further to defraud the plaintiffs, claimed that they should still continue to pay patent rent under the license, at the rate of five dollars for each machine not exported, and two dollars for each machine exported, and threatened that if the plaintiffs should refuse, they would give notice in writing to the plaintiffs of their election to terminate the license in thirty days, and would publish and circulate the statement that the license had been terminated.

It further alleged that the plaintiffs were willing to pay all sums which should fall due under the license, if any, as patent rent, and had offered in a suit in equity, founded on the wrongs herein complained of, against the Singer Manufacturing Company, now pending in the Circuit Court of the United States for the Southern District of New York, to deposit with such receiver as that court should name all such sums as the patent rent under the license, at the rate of five dollars for each machine not exported, and two dollars for each machine exported, would amount to for each and every quarter year which should expire during

the pendency of that suit, at the times when the same would fall due under the license as originally framed; the said sums to be held by such receiver subject to the order of that court, and to await the final decree in that suit; that the plaintiffs were ready to give any further security by the filing of such bond as this court should require, if any, or otherwise, for the payment of any sums which should be found to be due the licensors under the license; that, nevertheless, the licensors had been largely overpaid under the license, and were entitled to receive only forty cents for each machine made or sold under the license since October 1, 1868; and that they were bound to refund to the plaintiffs the amount which had been overpaid to them as aforesaid, or to hold the same in trust for the plaintiffs, to be applied in payment and satisfaction of all sums that might hereafter accrue and become payable from them for such patent rents, at the rate of forty cents for each machine for which rent might hereafter become payable under the license.

It also alleged that the Wheeler & Wilson Manufacturing Company and the Singer Manufacturing Company were without the jurisdiction of the court, and therefore were not made parties to the bill.

The prayer was for discovery; that the defendants might be ordered to reduce the patent rent reserved in the license to the plaintiffs to the sum of forty cents for each machine made or sold under the license after October 1, 1868, might account with the plaintiffs for and pay over to them the sums received by the licensors under the license, and to which they were not entitled as aforesaid, and might not claim nor demand of the plaintiffs any other or further sums under said license than would be due thereunder at the rate of forty cents for each machine made or sold since October 1, 1868, and not already paid for, that the plaintiffs might not be disturbed nor interfered with in their business during the pendency of this suit; that the defendants, their servants, agents and confederates, might be enjoined from giving notice, during the pendency of this suit, to the plaintiffs of their option or purpose or election to terminate the license to the plaintiffs, and from attempting to collect license fees or patent rent

from the plaintiffs until further order of the court; and for further relief.

Upon filing the bill, an injunction was granted commanding the defendants, their confederates, servants, agents, attorneys and counsellors to refrain from giving said notice to the plaintiffs, and from attempting to collect license fees or patent rent from the plaintiffs until further order of the court.

The defendants demurred to the bill for want of equity, and because the Wheeler & Wilson Manufacturing Company and the Singer Manufacturing Company were not made parties.

Hearing before *Chapman*, C. J., who, by agreement of parties, reserved the case for the determination of the full court upon the defendants' demurrer for want of parties, and also on the question whether the plaintiffs were entitled to relief by way of injunction as prayed for. The argument upon this report was had in June 1871.

*E. R. Hoar & A. L. Soule*, for the plaintiffs.

*E. W. Stoughton* (of New York) *& E. Merwin*, for the defendants.

CHAPMAN, C. J. This case is reserved by agreement of the parties, for hearing upon the following points: 1. Upon the defendants' demurrer for want of parties. 2. On the question whether the plaintiffs are entitled to relief by way of injunction, as prayed for in their bill.

These two points may conveniently be discussed together; for if the plaintiffs are not entitled to relief by way of injunction, the question of want of parties becomes immaterial; and if they are so entitled, the question whether other parties should be joined depends much upon the nature and circumstances of the case.

The parties alleged to be improperly omitted are the Wheeler & Wilson Manufacturing Company, and the Singer Manufacturing Company. It is contended in argument, that Gifford, the receiver of the defendants and of the other companies, should also be joined; but as he is their mere agent, having no interest in the matter, we cannot see that it would be any more necessary to join him than any other agent or servant, even if service of

process could be made upon him. The excuse alleged in the bill
for not joining the other parties named is, that the Wheeler &
Wilson Manufacturing Company are a corporation established and
doing business in Bridgeport, Connecticut, and the Singer Manu-
facturing Company are a corporation established and doing busi-
ness in the city of New York, and both are without the juris-
diction of this court.

Courts of law proceed in the absence of parties who cannot be
served with process ; and often proceed against persons who are
but nominally interested ; and sometimes without giving any
notice to parties really interested, leaving them to come in, if
notice reaches them by any means, or to protect their interests
in the name of the defendant of record. This is true as to
copartners and persons interested jointly with defendants of
record, and it is not deemed a wrong to absent persons who
may be interested in the subject matter of the suit, either wholly
or partially.

But in equity the general rule has always been, that all per-
sons materially interested in the subject matter of a suit must be
made parties to the bill. Yet, as is said in *Elmendorf* v. *Taylor*,
10 Wheat. 152, 167, the rule is introduced by the court itself for
the purposes of justice, and is susceptible of modification for the
promotion of these purposes. The general rule, and the reason
of it, are also stated by Lord Eldon, in *Cockburn* v. *Thompson*,
16 Ves. 321, 326, and he remarks that "the same principle, in a
great variety of cases, has obliged the court to dispense with the
general rule, as to persons out of its jurisdiction ; and there are
many instances of justice administered in this court in the ab-
sence of those, without whose presence as parties, if they were
within the jurisdiction, it would not be administered, as it obvi-
ously cannot be so completely as if all persons interested were
parties ; but the court does what it can." Judge Story, in his
treatise on equity pleading, speaks of the ground of this excep-
tion to the general rule, as being peculiarly applicable to the
United States, because so many parties reside in different states
and says that on this account it is usual to dispense with the gen-
eral rule, if, consistently with the merits of the case, it can pos-

sibly be done, as to all parties over whom the court would not possess jurisdiction. Story Eq. Pl. § 79.

There are cases where the court cannot properly give the relief sought, because it would affect the rights of absent parties, as in *Mallow* v. *Hinde*, 12 Wheat. 193, where the decree sought to be obtained would take from an absent party the muniments of his title to real estate, and place them in the hands of the plaintiff. Yet the court said that the Circuit Court had jurisdiction of the parties before the court, so far as to grant an injunction against the defendant, to restrain him from enforcing judgments at law which he had obtained, till the matter could be heard in equity and this would be so, in the exercise of a sound discretion, till the parties could litigate their claims before courts that had jurisdiction. Such a modification of the general rule has always prevailed in England, as is shown by the whole current of authorities ; and it also prevails in this court. *Towle* v. *Pierce*, 12 Met. 329. *Palmer* v. *Stevens*, 100 Mass. 461.

If absent defendants are joined, it is in order that they may be amenable to the court, and served with process if they come within the jurisdiction. Story Eq. Pl. § 80. But no method is suggested by which a manufacturing corporation, established in Connecticut or New York, and not residing here to do business, (like a foreign insurance company, for example,) can be within our jurisdiction so as to be made amenable to process against its will, as a natural person can. It may voluntarily come and ask to be admitted as a party ; or it may generally protect its rights in the name of the defendant of record, as interested parties are accustomed to do in suits at law ; but it is not subject to be brought in by compulsory process.

Whether, therefore, this demurrer for want of parties ought to be sustained, must depend upon the nature of the case ; and this involves the question whether there is a case made out for relief against any party by way of injunction.

It is not necessary that the court should be able to give the plaintiff full relief as to all the matters stated in his bill. The consideration that difficulties may arise in doing complete justice between the parties interested in the subject matter of the suit,

does not deter a court of equity from giving such relief as it may. It gives all the relief in its power. *Lumley* v. *Wagner*, 1 De G., M. & G. 604, 619. *De Mattos* v. *Gibson*, 4 De G. & J. 276, 282. See also authorities cited above. Even if a plaintiff may have a remedy at law to recover back money wrongfully received, this will not necessarily be an objection to his coming to the court for an injunction. *Parker* v. *Whyte*, 32 L. J. (N. S.) Ch. 520. *Tipping* v. *Eckersley*, 2 K. & J. 264. *Lumley* v. *Wagner*, 1 De G., M. & G. 604.

The plaintiffs contend that, in this case, the purpose of the injunction sought for is to restrain a tortious act. Clearly this is its purpose, upon the case stated in the bill and admitted in the demurrer.

By the agreement between the plaintiffs and the other companies, those other companies licensed the plaintiffs to use the patent rights therein described in the manufacture of sewing machines at a stipulated patent rent of five dollars for each domestic machine and two dollars for each exported machine, to be paid quarterly to the receiver appointed by the licensors, but reserving the right to terminate the license, on thirty days' written notice of their intention to do so, for breach of any of the plaintiffs' agreements, or in case the number of machines manufactured and paid for by the plaintiffs should fall short of two hundred and fifty per quarter. In October 1868, the licensors, for the purpose of defrauding the plaintiffs, gave a license under said patents to the Davis Sewing Machine Company of Watertown, New York, for manufacturing drop-feed sewing machines, paying therefor a patent rent of forty cents for each machine. This machine contained the same principle with that contained in the plaintiffs' license. One of the stipulations in the plaintiffs' license was, that the licensors should grant no other license for making such machines at a less patent rent per machine than that which the plaintiffs had stipulated to pay, without a corresponding reduction in the patent rent reserved from the plaintiffs. They concealed from the plaintiffs their license to the Davis Company, for the purpose of defrauding the plaintiffs, and continued to demand of the plaintiffs the original rent, and have fraudulently demanded

and received from them a large sum. They continue to make their demand, and declare and threaten that, if the plaintiffs refuse to pay it, they will give notice immediately of their election to terminate the plaintiffs' license, and will publish and circulate the statement that the plaintiffs' license has been terminated.

This notice and publication would do a great and irreparable injury to the plaintiffs. It would prevent the sale of the plaintiffs' manufactured machines, because their sales must depend on the confidence which purchasers have in the right of the vendors to sell. This is a matter peculiarly important in this species of property; for, if the plaintiffs have no right to sell, the buyer has no right to use the machine, and, if he attempts to use it, exposes himself to an action for damages and a suit for an injunction. The plaintiffs' title being derived from the licensors, they have peculiar advantages for bringing the plaintiffs' title into doubt, and deterring the public from incurring the risk of buying a machine which they may not be able to use legally, and the use of which may involve them in law suits. If the sales are greatly diminished, a large amount of the plaintiffs' property, which is invested in the manufacture, will thereby lose a great part of its value; and if the sales shall fall below two hundred and fifty machines per quarter, the license will thereby be forfeited. It would be difficult, if not impossible, to estimate with any degree of accuracy the amount of this injury; and it would be practically impossible to repair it; so that the injury threatened would be not only very great, but irreparable. It presents a stronger case for an injunction against a tort which will work irreparable injury than appeared in either of the following cases: *Peabody* v. *Norfolk*, 98 Mass. 452; *Morse Twist Drill & Machine Co.* v. *Morse*, 103 Mass. 73; or in the recent English cases there cited, namely, *Ainsworth* v. *Bentley*, 14 Weekly Rep. 630; *Stiff* v. *Cassell*, 2 Jur. 348; *Ingram* v. *Stiff*, 5 Jur. (N. S.) 947; and *Leather Cloth Co.* v. *Lorsont*, L. R. 9 Eq. 345. In this case the injury will be irreparable, within the principles settled in the foregoing cases, and within the terms of the general rule as to such injuries as stated in Kerr on Injunctions, 199.

Courts of equity also interfere by injunction to prevent forfeit-ures, if the party is willing to pay what is really due. *Lilley* v *Fifty Associates*, 101 Mass. 432, and cases there cited.

The threatened acts of notice and publication being tortious on the part of these defendants, no injustice will be done to parties out of the jurisdiction by restraining these defendants without joining them. A party may be enjoined against a tortious act, even if other parties interested with him are within the jurisdic-tion and not joined. *Wilkinson* v. *Parry*, 4 Russ. 272, 274. *Attorney General* v. *Wilson*, Cr. & Ph. 1, 28. Much **more** if they are not within it.

It is objected that an injunction against these defendants oper-ates as an injunction against the other licensors, who have not been heard. It must be admitted that an injunction against the defendants will disable them from giving such a notice as to work a forfeiture under the contract, or an irreparable injury. And if this is a fatal objection, the defendants, by joining with them-selves in their business persons without the jurisdiction, may de-stroy the plaintiffs' rights and property, and violate their contract without restraint.

Equity does not look upon such a result with favor. It is not proposed to restrain the defendants or their co-licensors from bringing an action at law, and thus obtaining the amount due them and determining their right. Nor is it proposed to leave them, in the mean time, without security. No injury need hap-pen to them except delay of payment ; and this, in contemplation of equity, can be exactly compensated. In an action at law, they would all join, and thus each would protect their own peculiar interest. An injunction only prevents them from doing acts which will be ruinous to the plaintiffs, and tend to produce a for-feiture of the plaintiffs' rights, and are admitted by the defend-ants to be tortious. Or this court may direct the plaintiffs to bring actions at law to try their right, if the defendants shall file an answer making such a course expedient and proper, or if the parties without the jurisdiction shall elect to appear and file such answer. In such case, an action at law must be brought against one of the licensors without including the others, unless they all

elect to appear, since they are all in separate jurisdictions. And a judgment may be recovered, if the plaintiffs prove their case, against each one of the licensors for the whole amount, though there can be but one satisfaction. If, notwithstanding such judgment, the licensors should still threaten to give the notice and make the publication, equity would restrain them by perpetual injunction.

Upon the authorities above cited, and for the reasons above stated, we think the plaintiffs are entitled to the relief prayed for, although the parties out of the jurisdiction are not joined.

One of the points made by the defendants is, that the plaintiffs have a full, adequate and complete remedy at law. This is true, so far as they seek to recover back the money paid before they had knowledge of facts concerning the license to the Davis Sewing Machine Company. But if they pay money with knowledge of those facts, in preference to litigating the matter, their right to recover it back is at least doubtful. And an action at law furnishes no remedy against the threatened irreparable injury. It would leave the plaintiffs defenceless against such injury, however tortious.

It is also contended that this bill is an attempt to interfere with the rights of a patentee under the laws of the United States, and to transfer to a state court questions that belong exclusively to the courts of the United States. It is true that the subject matter of the contract is a license to use certain patent rights. But contracts may be made respecting patent rights that may be enforced in the state courts. When the controversy turns upon the effect of the contract, and not upon the letters patent, the case is within the jurisdiction of the state courts. *David* v. *Park*, 103 Mass. 501. Curtis on Patents, § 496, and cases there cited. This suit does not involve the validity of the patent, but turns upon the contract between the parties ; and the court has jurisdiction. Questions of such a character are often tried in state courts, involving, for example, frauds and warranties connected with the sale of patent rights.

The defendants cite a case recently decided in the United States Circuit Court for the Southern District of New York,

*Florence Sewing Machine Co.* v. *Singer Manuf. Co.* 8 Blatchf. C, C. 113, in which the plaintiffs brought a bill similar in substance to the one in this case, but seeking still further relief also against the Singer Manufacturing Company. Judge Blatchford granted a temporary injunction; but when the case came up for final hearing upon bill, answer and proofs, Judge Woodruff dismissed the bill, without deciding whether the plaintiffs' case was established by the proofs or not. We have not decided this case without giving careful attention to the decision in that case, and the reasoning and positions on which it rests. We have not been able to concur in the opinion of the learned judge. It seems to us to be at variance with the authorities above cited, and with the principles upon which courts of equity are accustomed to proceed in granting and refusing injunctions. We understand him to say that, if the proofs in the case established the fact that such a license had been granted to the Davis Sewing Machine Company as was alleged, and the defendants threatened to give the notice and make the publication unless the plaintiffs would continue to pay the larger rent which they were not bound to pay, a court of equity would not restrain the defendants from doing the threatened mischief. We think, on the contrary, that, by the whole current of the authorities, the plaintiffs would, in such a case, be entitled to a remedy by injunction. Certainly in a case like the present, where all the plaintiffs' allegations are admitted, the right to such remedy is beyond doubt.           *Demurrer overruled.*

After this decision the plaintiffs, on January 27, 1872, filed a petition praying for process of contempt against the defendants for violating the preliminary injunction granted at the filing of the bill; and the defendants moved that the injunction might be modified or dissolved. The petition and motion were heard together before *Ames*, J., who made a report of the case substantially as follows:

The plaintiffs on December 30, 1869, filed a bill similar to thi. bill, against the Singer Manufacturing Company in the Circuit Court of the United States for the Southern District of New York, and on January 10, 1871, a preliminary injunction was

MARCH 1872. 15

Florence Sewing Machine Co. *v.* Grover & Baker Sewing Machine Co.

therein issued against the Singer Manufacturing Company, upon condition that the plaintiffs should deposit with the clerk of the court a sum equal to the amount of certain instalments of the full patent rent reserved to the licensors by their license, and the plaintiffs deposited said sum accordingly.

The United States court decided in December 1870 that the plaintiffs could not maintain their bill, for want of equity, and also for want of necessary parties; and thereupon both the plaintiffs and the defendants in that suit applied to that court for the payment to them respectively of the fund in court. On January 14, 1871, the defendants in that suit, the defendants in this suit and the Wheeler & Wilson Manufacturing Company filed a petition in the United States court, praying for the payment to them of the fund. On January 24, 1871, the plaintiffs filed a petition in this court praying for process of contempt against the defendants for having violated the injunction, first by having joined in a notice to the plaintiffs of the intention of the licensors to revoke their license to the plaintiffs, and secondly by having attempted to collect patent rent or license fees by joining in the above mentioned petition to the United States court. At the hearing on the petition January 28, 1871, it appeared that the defendants had not intentionally violated the injunction in the manner first alleged; and the plaintiffs did not contend that they had violated it as secondly alleged, and they were discharged. They did not withdraw their petition from the United States court. On February 5, 1871, the United States court rendered a decision refusing to order the payment of the fund "to either of the parties." No decree has been entered in that case. Upon December 21, 1871, the Singer Manufacturing Company brought a cross-bill in the United States court against the plaintiffs to obtain possession of the fund, which bill is now pending in that court.

On December 14, 1871, the defendants in this suit assigned in writing to the Singer Manufacturing Company all their right, title and interest in said fund, and the Singer Manufacturing Company covenanted to pay to these defendants a sum equal to one third part of whatever it should receive out of the fund. A

similar assignment and covenant were made between the Singer Manufacturing Company and the Wheeler & Wilson Manufacturing Company. The assignment by the defendants was made in order to facilitate the application of the Singer Manufacturing Company for the fund by its cross-bill, and under the belief on the part of the defendants that they had the right to make it, and with no intention to violate or disregard the injunction.

The questions whether the defendants were prohibited by the injunction in this case from making the assignment, and whether, upon the foregoing facts, it was competent for the plaintiffs upon this petition to contend that the defendants were thus prohibited, and also the question whether the injunction should be dissolved, or if not, whether it should be modified, and to what extent, were reserved for the determination of the full court.

*E. R. Hoar & A. L. Soule*, for the plaintiffs.

*B. R. Curtis & E. Merwin*, for the defendants.

GRAY, J. It has been determined, at the hearing upon the demurrer, that this suit may be maintained in this court against the defendants alone, without joining their co-licensors, the Singer Manufacturing Company and the Wheeler and Wilson Manufacturing Company.

The question now before us is whether the defendants have violated the injunction, granted by this court upon the filing of the bill, and which prohibited the defendants, their confederates, servants, agents, attorneys and counsellors, from attempting to collect license fees or patent rent from the plaintiffs under the joint license to them from the defendants and their associates.

The plaintiffs had earlier filed a similar bill against the Singer Manufacturing Company in the Circuit Court of the United States for the Southern District of New York, in which that corporation was established. The Grover and Baker Sewing Machine Company, being, as well as the plaintiffs, established in this Commonwealth, were not and could not have been made a party to the suit in that court; and this was one of the grounds upon which that court held that that suit could not be maintained, and dismissed the bill. The only other ground assigned for that decision was want of equity, and no opinion was ex

pressed upon the merits of the case. *Florence Sewing Machine Co.* v. *Singer Manuf. Co.* 8 Blatchf. C. C. 113.

The plaintiffs after obtaining from this court the preliminary injunction against the present defendants, obtained a like injunction against the Singer Manufacturing Company from the United States court in the suit previously commenced there, and, in compliance with the terms of the order granting that injunction, deposited certain sums with the clerk of that court. The obtaining of that injunction and payment of the fund into that court, in order to secure the plaintiffs' rights against the Singer Manufacturing Company, did not affect the plaintiffs' rights to proceed in this court against the Grover and Baker Sewing Machine Company, or amount to a release or waiver of the injunction already obtained here against the latter.

The fund deposited by the plaintiffs with the clerk of that court in compliance with its order was of several instalments of the full patent rent reserved to the three licensors jointly by their license, and amounted to a pledge or security for the payment thereof, if ultimately found to be due ; and that court, after dismissing the bill, refused to order the fund to be paid out to either party, and left open the questions to whom the fund belonged and in what court the right to it should be determined. *Florence Sewing Machine Co.* v. *Singer Manuf. Co.* 8 Blatchf. C. C. 177.

The present defendants, not being a party to that suit, nor having any right to be heard therein, have since made an assignment of their share in that fund to the Singer Manufacturing Company. This assignment does not stand upon the ground of an application made by the defendants themselves to that court, and does not come within the class of cases in which the state courts have declined to prohibit parties from instituting suits or proceedings in the federal courts. It is a new step taken by these defendants, out of court, towards attempting to collect the patent rent for the benefit of themselves as well as of their co-licensors, without submitting their rights under the agreement of license to the decision either of this court or of. the court in which the fund was deposited, and is within the equity and spirit of the injunction from this court, and a contempt of its order.

The omission of the plaintiff, at the hearing of the former ap plication to this court for process for contempt, to insist that the petition, presented to the United States court in behalf of the three licensors, was a violation of the injunction of this court, does not affect the right to treat the assignment in question as a new and distinct act of disobedience to that injunction.

The result is that there is nothing in the proceedings heretofore had, either in the court of the United States or in this court, to protect the defendants from being adjudged guilty of a contempt by making this assignment.

The motion to modify the injunction, being made more than a year after the injunction was granted, and after this cause has been brought to issue upon the merits, and unsupported by proof of any new or special circumstances, comes too late. This motion is therefore overruled, and the

*Defendants adjudged guilty of contempt.*