HAZARD, Commissioner, *v.* DURANT and others.

SAME *v.* SAME.

*(Circuit Court, D. Massachusetts. February 15, 1884.)*

1. EQUITY PLEADING—RELEVANCY OF AVERMENTS.

A stockholder of the Credit Mobilier brought suit in behalf of himself and others against Thomas C. Durant and others, trustees, to enforce the trust, and set forth in his bill a decree formerly rendered in a different court declaring

certain shares nominally held by Durant to be in fact the property of the stock-holders of the Credit Mobilier and appointing the plaintiff in the present case receiver of all moneys due from Durant to the stockholders. *Held,* that the averment of the plaintiff's appointment as receiver was relevant as tending to show the disposition to be made in the final decree of the moneys for which the defendants may be held accountable.

2. SURVIVAL OF LIABILITY FOR BREACH OF TRUST—JOINDER OF DEFENDANTS.
   The personal representatives of a deceased trustee are liable to the extent of their assets for breaches of trust committed in his life-time; and in case of a joint breach of trust the representatives of a deceased trustee may be joined with the survivors as defendants.

3. ABSENCE OF PARTIES BEYOND THE JURISDICTION OF THE COURT—WHEN RELIEF WILL BE GRANTED.
   When effectual relief can be given against the parties actually appearing, the courts of the United States will not dismiss a bill because of the absence of other parties whose appearance would be required if they were within the jurisdiction of the court.

4. SAME—JOINT BREACH OF TRUST.
   Such relief can be given against one of several trustees jointly implicated in a breach of trust, since their liability is several as well as joint.

5. POWERS OF RECEIVER LIMITED TO THE JURISDICTION WHERE APPOINTED.
   A receiver appointed in one jurisdiction to take charge of a fund cannot sue in another in his own name, though expressly authorized by the decree to maintain actions in his own name.

In Equity.

*Elias Merwin,* for complainant.

*S. Bartlett* and *R. D. Smith,* for defendants.

Before LOWELL and NELSON, JJ.

NELSON, J. These suits, arising out of the same transactions, and between the same parties, may conveniently be considered together. In the first case, the plaintiff brings his bill "as he is commissioner under the decree of the supreme court of Rhode Island, in a suit in equity pending in said court, wherein the said Rowland Hazard and others are complainants and Thomas C. Durant and others are defendants," and "in behalf of himself and all others who were stock-holders in the Credit Mobilier of America, on the fifteenth day of July, 1867."

The allegations of the bill, filed December 7, 1882, are in substance as follows: On the sixteenth of August, 1867, a contract was made between the Union Pacific Railroad Company and Oakes Ames, whereby Ames undertook to build and equip certain portions of the railroad and telegraph lines of the company, in which agreement were set forth the terms upon which the building and equipment were to be undertaken, the extent and character of the work to be done, and the times and amounts of payment to be made by the company for its performance. On the fifteenth of October, 1867, an agreement in writing was made between Oakes Ames, party of the first part, Thomas C. Durant and six other persons, named as trustees, parties of the second part, and the Credit Mobilier of America, party of the third part, by which the construction contract between Ames and the Union Pacific Railroad Company was assigned to the trustees, parties of the second part, upon the trusts and conditions that the trustees should

perform all the terms and conditions of the construction contract which were to have been performed by Ames, and that the avails and proceeds of the contract, after certain deductions for expenses, should be held by the trustees for the use and benefit of the several persons owning and holding shares in the capital stock of the Credit Mobilier of America, and for the use and benefit of the assignees of such holders who might comply with the provisions of the agreement. On the third of July, 1868, the first agreement was so far changed and modified by a new agreement executed by all the parties, that the trusts in favor of the stockholders and the assignees of stockholders were transferred to and vested in the persons specified in the instrument, who constituted all the stockholders of the Credit Mobilier. The plaintiff, at the date of the trust agreement, was and has since continued to be, a stockholder in the Credit Mobilier, and has complied with all the provisions of the agreement. The bill also sets forth the proceedings and decree in the Rhode Island suit, as is more fully stated later on. The bill alleges that in the execution of the trusts thus created, money and securities to a large amount came into the hands of the original trustees, or their successors, a portion of which has been divided among the stockholders, but the residue, alleged to amount to many millions of dollars, the trustees have failed and refused to account for and distribute; and, also, that the trustees have been guilty of willful negligence and misconduct in the management of the trusts. The prayer of the bill is for an account and for other relief.

In the second suit, the plaintiff proceeds alone in his capacity as commissioner appointed in the Rhode Island suit. The bill sets forth the construction contract between Oakes Ames and the Pacific Railroad Company, the agreement by which it was assigned to the trustees for the benefit of the Credit Mobilier stockholders, the later modifying agreement, the acceptance of the trusts by the trustees, the receipt by them of money and securities to a large amount for which they are accountable under the trust agreement, and their refusal to account. The bill further states that in August, 1868, Isaac P. Hazard and others, as stockholders in the Credit Mobilier and beneficiaries under the trust agreement, brought a suit in equity against the trustees and others in the supreme court of the state of Rhode Island; that process was issued and served upon Durant, Oliver Ames, John Duff, and some of the other defendants, who were found within the jurisdiction, and that they appeared in the suit; and, upon the decease of Ames and Duff, their executors were made parties, and duly cited to appear; that on the twenty-second of the same month an injunction was issued in the suit enjoining Durant from receiving or disposing of any dividends then declared or which should be thereafter declared, on 5,658 shares of the capital stock of the Credit Mobilier standing in his name; and that on the same day the injunction was served on Durant, Ames, and Duff, and the other

trustees; that the trustees, in violation of the injunction and conspiring with Durant to deprive the stockholders of the benefit of the injunction and of the dividends and profits on the shares, in January, 1869, and again in February, 1870, transferred and delivered to Durant certain shares and income bonds of the Union Pacific Railroad Company, being dividends on the 5,658 shares of Credit Mobilier stock; that by the final decree entered in the cause December 2, 1882, against Durant alone, it was adjudged and decreed, in accordance with the allegations of the bill, that the 5,658 shares standing in the name of Durant, as nominal owner, in fact belonged to the stockholders of the Credit Mobilier, and should inure to their benefit; and that Durant should, within 30 days from that date, transfer and deliver the shares and all dividends received by him thereon to the plaintiff and one Henry Martin, or either of them, as special commissioners, for the benefit of the Credit Mobilier stockholders; and that the commissioners should jointly and severally have power to take measures forthwith, by suit in their own name or otherwise, to enforce the transfer and delivery of the shares and dividends; and that Durant was accountable for and should pay for the benefit of the complainants in the suit, and the other beneficiaries under the trust agreement, the sum of $16,071,659.97, within 90 days from the date of the decree. The bill further averred that Durant had disposed of the dividends and was insolvent. The prayer of the bill was for an account of all the profits received by the trustees under the trust agreement, and of the dividends paid over to Durant, and for such orders and decrees as should be necessary to carry into effect the Rhode Island decree. The defendants in each case are three of the original trustees, the executors of others who have deceased, three persons substituted in the place of deceased trustees, and the Credit Mobilier of America, alleged to be a corporation created under the laws of the state of Pennsylvania. In each case the plaintiff prays for process against those of the defendants who are citizens of this state, and that those residing out of the state may be cited to appear. Those residing out of the state were not served with process, and did not appear. The executors of Oliver Ames, an original trustee, who died in 1877, the executors of John Duff, who died in 1881, appointed in March, 1868, in place of an original trustee, Frederick L. Ames and F. Gordon Dexter, appointed in place of deceased trustees, the only defendants who were citizens of Massachusetts, appeared and filed demurrers, upon which the cases were heard.

An objection is taken in the first suit that the plaintiff's bill is brought in two capacities—one as commissioner under the Rhode Island decree, and the other in his individual capacity in behalf of himself and the other stockholders. But we think the bill is susceptible of a different construction. That the plaintiff can sue as a stockholder in behalf of all cannot admit of question. By the decree in

the Rhode Island suit, which upon its face seems to be valid as between Durant and the other stockholders, it has been finally determined that the 5,658 shares standing in Durant's name as nominal owner, and all dividends accruing thereon, in fact belong to the other stockholders. It was therefore proper that this should be made to appear to the court, so that in the distribution of the avails of this suit the proportion pertaining to the shares should not be paid over to Durant as owner, but should either go to the plaintiff, as commissioner or receiver appointed to receive them by a court of competent jurisdiction, or in some other form, to be settled in the final decree, should inure for the benefit of the stockholders. Considered in this view, the averments of the bill relative to the plaintiff's appointment as commissioner are pertinent and material.

Another objection is that the executors of the deceased trustees are not accountable for breaches of the trust committed by their testators in their life-time. But that the executors are liable in such cases to the extent of the assets in their hands, is clear upon all the authorities. In Hill, Trust. 520, the rule is stated to be this:

"The executor or administrator of a deceased trustee is liable to the extent of the assets for a breach of trust committed by the testator or intestate in his life-time; and this liability may be enforced by suit. And when there are several co-trustees, who have been all implicated in a breach of trust, the representatives of those dying first will be liable to the same extent jointly with the surviving trustees, or their representatives if dead."

In 2 Perry, Trusts, § 877, the rule is thus expressed:

"The representatives of a deceased co-trustee are liable to the extent of assets received by them, for a breach of trust committed in his life-time, and they may all be joined that their relative rights may be ascertained in the suit."

There is nothing in the bill to show that the securities alleged to have come into the hands of the trustees cannot be transferred by the defendants before the court. Whether if this were otherwise it would afford an excuse to the defendants for not accounting for the securities, is not a question which it is necessary now to consider.

Another ground of demurrer in the first suit, assigned *ore tenus* at the argument, is that the suit cannot be maintained, or a decree of the character sought be made against the defendants who have appeared, until all the other existing trustees shall also have appeared and submitted to the jurisdiction. Section 737 of the Revised Statutes—a re-enactment of the first section of the act of February 28, 1839 (5 St. 321)—is as follows:

"When there are several defendants in any suit at law or in equity, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought and do not voluntarily appear, the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process nor voluntarily appearing to answer; and the non-joinder

of parties who are not inhabitants of nor found within the district, as afore-said. shall not constitute matter of abatement or objection to the suit."

The effect of this statute and of the forty-seventh equity rule, made to regulate the practice of the court under it, has received the construction of the supreme court. The rule now well settled by the decisions is this: When there are parties who cannot be subjected to the jurisdiction of the court, whose interest in the subject-matter of the suit and in the relief sought are so bound up with the other parties that their presence is an absolute necessity, without which the court cannot proceed and make an effectual decree, the suit will not be maintained; but when an effectual decree can be made between the parties actually before the court, it will entertain the suit and proceed to administer such relief as may be in its power, although there may be absent parties, whose presence the court would require, if within its jurisdiction. *Shields v. Barron*, 17 How. 130; *Barney v. Baltimore City*, 6 Wall. 280; *Kendig v. Dean*, 97 U. S. 423; *Goodman v. Niblack*, 102 U. S. 556; Story, Eq. Pl. §§ 78, 79.

Taking the narrative of the bill to be true, as we are bound to do by the demurrer, the trustees, acting jointly, have received many millions of dollars in money and securities, the property of the stock-holders, which they still retain, and refuse to account for under the trust agreement; and they have also been jointly guilty of gross negligence and misconduct in the management of the trusts, from which the stockholders have suffered loss. Can the co-trustees relieve themselves from all liability in such a case by simply taking up their residences in different states? We think not. By the familiar rules of the law, the liability of co-trustees, who have joined in a breach of the trust, is several as well as joint. If they are jointly implicated in the breach, they may be properly joined by the *cestui que trust* in a suit to enforce their liability, and he may have a decree against them jointly; but he may take out execution against any one of them separately, as each is liable for the whole amount. If any one of them is compelled to pay the whole, he may have contribution from the others who are implicated with him. Undoubtedly difficulties may arise in adjusting the equities between the co-trustees, where all of them are not before the court, but the inconvenience springs from their own wrongful acts, and should be suffered by them, and not by the *cestui que trust*. *Palmer v. Stevens*, 100 Mass. 461; Hill, Trust. 520; 2 Perry, Trusts, § 848.

We therefore hold, upon the case stated in the bill in the first suit, that this court can render an effectual decree against the defendants who have appeared, and has jurisdiction to entertain the suit against them in the absence of the other trustees, who cannot be served with process.

In the second suit, the plaintiff sues alone in his capacity as commissioner. He does not now ask to maintain the bill for any other purpose than to compel the trustees to account for the dividends on

the 5,658 shares paid to Durant after the service of the injunction. His position is that the dividends were charged in the hands of the trustees with a trust in favor of the stockholders, who where the equitable owners of the shares; and, as the trustees paid them to Durant, with notice of the equitable title, and with the purpose of preventing them from coming to the stockholders, they should be held accountable for them to him as the person officially authorized by the Rhode Island court to collect and receive them. Whether, under such circumstances, a suit for the dividends by the stockholders could be sustained against the trustees, it is not necessary to inquire. The plaintiff has no interest in them derived by assignment from the stockholders, and no transfer of the shares has ever been made to him by Durant. His claim rests solely upon his appointment as commissioner. Although called a commissioner in the decree, it is evident that his powers and duties are solely those of a receiver, and he must be treated in that capacity alone.

It was decided in the case of *Booth* v. *Clark,* 17 How. 322, a decision binding in this court, that a receiver appointed by a court of chancery, being a mere officer and servant of the court appointing him, and having no title to the fund by assignment or conveyance, or other lien or interest than that derived from his appointment, cannot, in his own name, maintain a suit in another jurisdiction to recover the fund, even when expressly authorized by the decree appointing him to bring suits in his own name. This of itself is a fatal objection to the second suit, and makes it unnecessary for us to consider the other objections which have been made to the bill.

In the first suit the demurrers are overruled, and in the second the demurrers are sustained.