## READY AND BANKS, Ex'rs, v. THE MAYOR AND ALDERMEN OF THE CITY OF TUSKALOOSA.

1. The corporation of Tuskaloosa made proposals for building a wall across a gully, which, among other things, provided that the work was to last for ten years, and required bond and security for the faithful performance of the contract. The work was undertaken by one J. W., who, with E. S. as his surety, executed to the corporation a penal bond, which recites most of the terms contained in the specification, and which was also attached to the bond, and

concludes—Now, if the said J. W. shall do accordingly all matters and things as stated in said specification alluded to, and faithfully do and perform said undertaking or contract, in the best workmanlike manner, and in the shortest practicable time, then this bond to be void, &c. *Held*, that the surety was bound to the same extent as the principal, and was therefore liable on the bond for damages, the wall having been carried away by a freshet before the expiration of ten years.

2. When the name of a corporation is changed, it may sue in its new name, to enforce its former contracts, averring that they were made with it by its former designation.

3. The corporation is not liable for the acts of its marshal, unless done by its direction.

4. The corporation having failed to pay the last instalment due for the work, it was competent for the defendant to prove this fact in mitigation of the damages.

Error to the Circuit Court of Tuskaloosa.

This action was brought by the defendants against the plaintiffs in error upon a penal bond. The declaration is as follows :

The Mayor and Aldermen of the city of Tuskaloosa complain of Aaron Ready and Willis Banks, executors, &c., of a plea of debt, that they render to the plaintiffs the sum of eight thousand dollars, &c. For that whereas the said Edward Sims, in his life time, to wit: on the 20th May, 1833, at, &c., together with one John J. Webster, not sued in this action, by his certain writing obligatory, sealed, &c., acknowledged himself to be held and firmly bound to the plaintiff, by the name and style of the Mayor and Aldermen of the *town* of Tuskaloosa, and their successors in office, in the said sum of eight thousand dollars, to be paid to the said plaintiffs and their successors in office. And the said plaintiffs, according, &c., say that the said writing obligatory was made with a condition thereunder written, that whereas the said John J. Webster had undertaken, by contract, to do certain work upon a certain ditch known as being near Colgin's smith shop, according to the specifications, as were stated upon a half sheet thereunto attached, for the sum of four thousand dollars, one-fourth part to be paid whilst the work was progressing, or when the work was completed, and the balance at three equal annual instalments from the time the work was done, as specified. He, the said John J. Webster, warranting the same to stand for the term of ten years, in good order, from the time the

JANUARY TERM, 1844.                    329

Ready and Banks, Ex'rs, v. The Mayor and Aldermen of Tuskaloosa.

same was completed, then if the said John J. Webster did so according to all matters and things as stated in said specifications alluded to, and faithfully did and performed said undertaking or contract in the best workmanlike manner and shortest practicable time, then said bond to be void, otherwise to remain in full force and virtue.

And said plaintiff further says, that in the said specification in the condition of the said writing obligatory mentioned, which the said plaintiff now brings into court, it was specified that the work on the big wash or ditch near Colgin's shop, should consist of a wall of good large rock or good well-burnt brick, fixed on a good firm foundation, and laid in good lime and sand cement or mortar, the wall to be run at the lower or north side of broad street, extending from the extreme break near Colgin's smith shop to the extreme break towards Dr. Tindall's. The wall to be at least one foot higher than the graduation of the street the whole extent on each side the wash. Broad street to be graduated east from the wash as far up as to the cross street between Dr. Tindall's and E. Smith's, and the slope to be regular and gradual; and west of said wash as far as the cross street near Col. Donaldson's, with the same gradual slope. The side walks are to be preserved, and where the streets are cut down at the sides, to have them sloped, and not abrupt; and to graduate College street from Broad street to Cotton street, with a gradual slope. In the graduation of Broad street at the wash, to have the fall, from the mouth of the ditch, where the plank conductor is in it, to the north side of Broad street where the wall is constructed, about one foot. To make a good pavement, well put down of rock, entirely across Broad street, where the water passes from the ditch, at least twenty feet wide the whole width of the street. To make arrangements to prevent the water falling abruptly over said wall so as to produce a wash below the wall, and to pass the water off freely down the wash. The work to be commenced immediately, and to be performed in as short a time as practicable, and to be warranted for ten years from the time the work is completed, and to be kept in good order during that time, and the whole of the wash to be left in a good condition at the end of ten years. For which the said plaintiff was to give four thousand dollars, payable, &c.; and although the said plaintiff has well and truly performed, &c. &c. Yet protesting, &c. the said plaintiff in fact

says that, although it was always ready and willing, and did pay, &c., yet the said John J. Webster, or the said Edward Sims, in his life, or either of them, or any person in their behalf, did not nor would, after the making of the said condition and specification, do and perform the said work upon the said ditch according to the said specification and condition, and do and perform such undertaking and contract in the best workmanlike manner, nor did nor would keep the whole of said work in good order and condition according to the form and effect of the said specification and condition in that behalf, but on the contrary thereof, &c., negativing all the undertakings in the condition and specification, and charging that in consequence the work became ruinous, &c.

2d breach: That in consequence of the unfaithful and un-workmanlike manner in which the work was completed, it did not last for the space of ten years from the time when it was completed, whereby, &c.

The defendants craved oyer of the bond, condition and specification. The latter are as follows;

"Whereas, the above bound John J. Webster, has undertaken by contract to do and perform certain work upon a certain ditch, known, &c., according to the specification, as is stated upon a half sheet of paper hereto attached, for the sum of four thousand dollars, one-fourth to be paid while the work is progressing, or when the work is completed, and the balance at three equal annual instalments from the time the work is done as specified. He warrants the same to stand for the term of ten years from the time the same is completed. Now, if the said John J. Webster shall do accordingly all matters and things as stated in said specification alluded to, and faithfully do and perform said undertaking or contract in the best workmanlike manner, and in the shortest practicable time, then this bond to be void, otherwise, &c.          (Signed,)          J. J. WEBSTER, [Seal.]
                                                   EDWARD SIMS, [Seal.]

*Specification.*

A plan for the work on the big wash, adopted by the committee appointed by the Mayor and Aldermen of the town of Tuskaloosa, to contract for filling and securing the same.——A wall of good large rock, or good well-burnt brick, fixed on a good firm foundation, and laid in good lime and sand cement or mor-

JANUARY TERM, 1844.                331

Ready and Banks, Ex'rs, v. The Mayor and Aldermen of Tuskaloosa.

tar; the wall to be run at the lower or north side of Broad street, extending from the extreme break near Mr. Colgin's smith shop to the extreme break towards Dr. Tindall's; the wall to be at least one foot higher than the graduation of the street the whole extent on each side the wash. Broad street to be graduated east from the wash as far up as the cross street between Dr. Tindall's and E. Smith's, and the slope to be regular, and graduated west of said wash as far as the cross street near Col. Donaldson's with the same gradual slope, the side walks to be left; and where the streets are cut down at the sides, to have them sloped, and not abrupt; and to graduate College street from Broad street to Cotton street, with a gradual slope. In the graduation of Broad street at the wash, to have the fall, from the mouth of the ditch, where the plank conductor is in it, to the north side of Broad street, where the wall is constructed, about one foot. To make a good pavement, well put down, of rock, entirely across Broad street, where the water passes from the ditch, at least twenty feet wide the whole width of the street. To make arrangements to prevent the water falling abruptly over said wall, so as to produce a wash below the wall, and to pass the water freely off down the wash. The work to be commenced immediately, and to be performed in as short a time as practicable, and to be warranted for ten years from the time the work is completed, and to be kept in good order during that time. The whole of the work to be left in a good condition at the end of ten years; for which they will give four thousand dollars, one-fourth of the amount to be paid while the work is in progress, or when it is completed, and the balance in three equal annual instalments from the time the work is done as above specified. The undertaker giving bond with approved security for the faithful performance of the contract."

The defendants demurred to the declaration, which was by the court overruled.

The defendants then pleaded five pleas.

1. After *oyer* of the bond, condition and specification, *onerari non;* because, they say, that the said John J. Webster, did do all matters and things as stated in said specification; did attend to and faithfully do and perform said undertaking and contract in the best workmanlike manner and shortest practicable time; and this, &c.

Ready and Banks, Ex'rs, v. The Mayor and Aldermen of Tuskaloosa.

2. The second plea avers, that the said John J. Webster did, immediately after the contract made between him and the Mayor, &c., commence the work in said specification mentioned, and did, in a good workmanlike manner, perform the same in as short a time as practicable; and this, &c.

3. The third plea recites all the conditions mentioned in the specification, (except that the work was to last, and did last for ten years,) and avers performance according to the contract.

4. *Nul tiel* corporation.

5. *Onerari non*, because they say that said Webster did begin the said work in the said condition and specification mentioned, and did complete the same in the shortest practicable time, in a good workmanlike manner, and did keep the same in good order and repair according to the true intent, legal effect and meaning of the said condition and specifications; and of this, &c.

The plaintiff demurred to the three first pleas, and took issue on the two last. The court sustained the demurrers, and decided the issue in law in favor of the plaintiff; and the jury having found a verdict for the plaintiff for two thousand dollars, judgment was rendered accordingly.

Pending the trial, a bill of exceptions was sealed, from which it appears that testimony was offered tending to show that the work was not done in a workmanlike manner; that the work was completed in 1833, and was destroyed by a great flood in 1840. That the last instalment had not been paid to Webster.

The defendants proved that the marshal of the town had pinned plank across the aqueduct to make a pass way for foot passengers, which, when it rained, had damned up the water, and prevented it from flowing through the aqueduct as it otherwise would have done; and that the witness being an alderman, he spoke of it to the Mayor and Aldermen, and told them that it would produce injury to the wall.

Whereupon the court charged the jury—1. That whatever Webster, as principal, undertook to do, Sims, as his surety, undertook that he would do. 2. That the delay of payment by the corporation did not excuse Webster for not doing the work, or keeping it in repair, according to the contract. 3. That the interference of the marshal of the corporation with the work, unless by the order of the corporation, did not impair their right to recover.

The counsel for the defendant moved the court to charge that the jury might deduct the last instalment, if not paid, from any damages they might consider the corporation entitled to; which charge the court refused, upon the ground that Webster could maintain his action at law, and that this was not a case for an off-set. To all which the defendants excepted.

Upon the issue on the plea of *nul tiel corporation*, the plaintiff offered no other testimony than the several acts of the Legislature incorporating the town and city of Tuskaloosa.

The assignments of error are—1 In overruling the demurrer to the declaration. 2. In sustaining the demurrer to the pleas. 3. In finding the issue in law for the plaintiff. 4. In the charges given and refused.

PECK & CLARKE, for plaintiff in error. The declaration is bad, because it does not aver that the plaintiff is a corporation, and the court cannot judicially take notice of it. [3 B. & P. 40; 6 Petersdorff's Ab. 642; Chitty's Precedents, 2, note E.; 1 Ch. Blackstone, top page, 86, note 21; the case of Madison College at this term.] 2. Because it does not sufficiently aver performance of conditions precedent. [1 Ch. Pl. 309, 16.]

The assignment in the second breach is bad, because the warranty that the work should stand for ten years, was confined to Webster, the principal. For the same reason, the demurrers to the pleas should have been overruled.

The court should have permitted the jury to consider the failure of the plaintiff to pay the last instalment in their estimate of the damage, not as a set-off, but by way of *recoupement*. [4 Wendall, 22, 51, 155; 3 Hill, N. Y. 171.]

PORTER, *contra*. It is not necessary, in a suit by a corporation, to aver that it is a corporation : it is sufficient that it sues by its appropriate name. [14 Johns. 245; 9 Cowen, 778; Angel & Ames on Cor. 2 Ed. 501.]

The three first pleas are bad, because they do not answer the whole declaration. [Gould..Pl. 358, 365, 370, 152; 1 Johns. 753; 2 ib. 413; 1 B. & P. 455; 3 Bibb, 330; 1 Littell, 5; 2 Mass. 97; 1 Greenleaf, 190.]

The issue upon the plea of *nul tiel* corporation was sustained by the production of the charter, passed in 1836, creating " The

Mayor and Aldermen of the city of Tuskaloosa" a body corpo-
rate by that name. The question which the defendants sought
to make could only have been raised by a plea averring an *ouster*,
dissolution, &c.

That a declaration is good which avers a contract with a cor-
poration by a different name. [See 10th Mass. 360; 13 Johns.
38; 1 Pen. 115; 5 H. & J. 122, 5 Hals. 323; 6 S. & R. 16; An-
gel & Ames on Cor. 503; 1 Ala. Rep. 243.]

Independent of this view, the act of 1836, secures to the
corporation all rights which previously belonged to the Mayor
and Aldermen of the *town* of Tuskaloosa, and certainly settles
this question.

The specification is as much a part of the condition of the bond,
as if it had been written out at length, and shows very clearly
that security was required for all the stipulations entered into by
the principal. [1 Hawks, 20; 7 J. J. Marshal, 192; 1 Munf. 45;
2 Con. 78; 6 Johns. 49; 5 G. & J. 239.] And such a construc-
tion must be put upon it as will render the whole operative. [1
Har. 154, 233; 1 Wend. 228; 1 Johns. C. 319; 3 Fairf. 65.]

The contract of the corporation was to pay in instalments
when the work was completed according to the contract. Un-
til such performance, there was no obligation on the corporation
to pay; and, therefore, there can be no right to diminish the dam-
age from the omission to pay. [3 H. & J. 163.]

If the marshal of the corporation interfered with the work, to
the injury of Webster, he is responsible to him. The corporation
is not liable, unless it directed or authorized such interference.

ORMOND, J.—The principal question in this cause is, the
construction of the covenant—the plaintiff in error contending
that Sims, the surety, did not, by the covenant he entered into,
warrant the work to stand for ten years. The interpretation of
the covenant is to be gathered from the language employed by
the parties, considered in connection with the subject matter of the
contract.

The corporation of Tuskaloosa, desiring to build a wall across
a wash or gulley, so as to arrest its further progress, made pro-
posals by a written specification, describing minutely the work
to be done, the manner and the time within which it was to be
done, and the price it was willing to pay for it. The work to

be left in a good condition at the end of ten years, and to be kept in repair during that time; the undertaker to give good security for the faithful performance of the contract. The work was undertaken by one Webster, who, jointly with the testator of the plaintiffs in error, executed a penal bond, the condition of which recites the contract entered into by Webster with the corporation, and refers to the specifications attached thereto, and proceeds—"Now, if the said John J. Webster shall do accordingly all matters and things, as stated in said specification alluded to, and faithfully do and perform said undertaking or contract in the best workmanlike manner, and in the shortest practicable time, then this obligation to be void, otherwise," &c.

It is most undeniable that Webster was bound by this covenant to do and perform all things contained in the specification; that was in fact the contract between him and the corporation, although its most material provisions are repeated in the condition of the bond to which it is annexed, and of which it forms a part. Webster then undertook that the work should last for ten years from the time of its completion; and, in our opinion, the surety is bound to the same extent. The duration of the work was the most important term of the contract, and for the faithful performance of the contract, surety was to be given as one of the conditions on which it was to be let. When, therefore, the measure of the liability of the principal is ascertained, that shows the extent of the liability of the surety.

The argument of the counsel for the plaintiff in error, that the surety did not intend to be bound for the durability of the work, is founded upon the language employed in the latter part of the condition—"Now, if the said John J. Webster shall," &c., as indicating that the surety was only to be bound for the performance by Webster of the particular matters there enumerated. This portion of the condition expressly provides that Webster shall *do and perform all matters and things contained in said specification;* and, although afterwards certain particulars are mentioned, which are included in the specification, by no fair rule of interpretation can this be understood as limiting the previous portion of the condition. The latter clause is not repugnant to, or inconsistent with, the former; but is merely superfluous. But if any doubt were created thereby, the specification which is in truth the contract, shows that surety was to be required for its per-

336 ALABAMA.

Ready and Banks, Ex'rs, v. The Mayor and Aldermen of Tuskaloosa.

formance; and it would be a strange rule of interpretation to permit a mere inference, conceding it to be such, to overturn an express term of the contract, and thereby to defeat the very object in view in requiring surety to be given. The very converse is the true rule; doubtful and ambiguous terms should be so construed, if possible, as to give effect to the clearly expressed intention of the parties. Sims, the surety, being bound, therefore, to the same extent as the principal, the court correctly sustained the demurrers to the pleas, which are framed upon the contrary supposition.

This contract was made with the Mayor and Aldermen of the *town* of Tuskaloosa; and subsequently, in 1836, the style of the corporation was changed to that of the Mayor and Aldermen of the *city* of Tuskaloosa. The action is brought by the city authorities by this latter name, and allege in the declaration that the bond was made to it by the name and style of the Mayor and Aldermen of the town of Tuskaloosa; and in our opinion this is sufficient. In the case of the Madison College v. Burke, at this term, we held, that a count upon a note made to the Trustees of the Manual Labor Institute of South Alabama, without connecting the Madison College with it, so as to show a legal title in the instrument declared on, was bad. In this case, that is done by the allegation that the bond was made to the corporation by the name in which it was given. The act of 1836, changing the corporate name, expressly reserves to the corporation all its rights, and renders it responsible for its obligations; and such would have been the law if no express provision to that effect had been made. [Corporation of Colchester v. Seabor, 3 Burr. 1866.] We think, therefore, the declaration was sufficient; and, for the same reason, the court did not err in its judgment upon the issue of *nul tiel corporation.*

The alleged interference by the marshal of the corporation with the work, thereby, as contended, increasing the danger from freshets, cannot affect the corporation, unless it be shown that he acted by its direction. The master may be liable, *civiliter*, for the acts of his servant acting in the usual course of his master's business; or where, whilst engaged in his master's business, by his negligence, he causes an injury to another. [1 Black. Com. 429; Blackburn v. Baker, 1 Ala. Rep. 178.] Here, the act of the servant was wilful, and not in the prosecution of the business of

the corporation: the corporation is not, therefore, responsible for his acts, unless done by its command.

It remains only to consider the right of the defendant below to set up, by way of *recoupment* of damages, the omission of the corporation to pay the last instalment agreed to be paid on the completion of the work.

It is certainly consonant to justice, that a party should be permitted, when sued for a breach of his contract, to reduce the damages, by showing the injury he has sustained by the failure of the other party to comply with the contract on his part, instead of driving him to his cross action, thereby multiplying suits and increasing litigation without any corresponding benefit. This principle has received the sanction of this court in Greene v. Linton, [7 Porter, 142,] in Hill v. Bishop, [2 Ala. 324,] and in Craddock v. Stewart's adm'rs, [at this term.] The same doctrine is asserted by the supreme court of New York, in Batterman v. Pierce, [3 Hill, 171,] in an elaborate opinion, where the rule, and the reason on which it is founded, are stated with clearness and ability. We can perceive no reason why the rule should not apply in this case. The corporation has certainly not sustained the same amount of damage it would have done, if it had paid the full amount agreed to be paid for the work; the defendant should, therefore, be permitted to mitigate the damage by proof of this fact; and for the error of the court, in refusing to receive such testimony, and in charging the jury that it could not go in mitigation of the damage sustained by the corporation, the judgment must be reversed, and the cause remanded.