ROOD v. WHORTON.

(Circuit Court, E. D. Wisconsin. April 29, 1895.)

1. CORPORATIONS—LIABILITY OF STOCKHOLDERS—BONA FIDE PURCHASER.
   One who purchases in good faith, in the open market, stock of a corporation which purports, on the face of the certificates, to be full paid and nonassessable, is not liable for assessments on such stock, though in fact it had not been fully paid.

2. SAME—MICHIGAN STATUTE.
   The A. Co. was organized, under the Michigan statutes, with a capital of $1,000,000, in shares of $25 each, all of which was subscribed, and on which $220,000 was paid in. In order to raise money for the purposes of the corporation, the original subscribers contributed two-fifths of their stock to a pool, to be sold at $3 per share, as full paid, nonassessable stock, the proceeds to be divided between the corporation and the contributors. Defendant, through one W., an agent of the corporation, not a stockholder, bought 800 shares, which were represented by W. to be full paid and unassessable. Defendant had no knowledge of the real facts. The corporation failed, and a receiver, under the

direction of the court, sued defendant for the unpaid balance on his stock. *Held,* that defendant was not liable, either at common law or under the statute of Michigan.

**2. SAME—STOCKHOLDERS—EFFECT OF JUDGMENT AGAINST CORPORATION.**

A stockholder of a corporation who is not made a party to proceedings in insolvency against it is not bound by a decree in such proceeding in respect to any question of his individual liability, involving his special holding of stock.

This was an action by William H. Rood, as receiver of the American Iron Company, against John H. Whorton, to recover an assessment upon stock held by him. The case was submitted to the court, jury trial being waived.

This is an action at law in which the plaintiff appears as receiver of the American Iron Company, an insolvent Michigan corporation, and seeks to recover of the defendant $12,000 and interest, assessed for the alleged unpaid portion of the capital stock held by him. The proceedings under which the plaintiff was appointed receiver arose and are pending in the circuit court for Marquette county, in the state of Michigan; and a decree has been there entered directing the assessment of $15 per share against the stockholders, and that the receiver proceed in its collection, by suit or otherwise. The defendant is a citizen of Wisconsin, and is not a party to the action in Michigan aside from his privity as stockholder. The insolvency of the corporation and the existence of a large indebtedness, which would require the assessment of stockholders to the extent claimed for liquidation, are shown by the decree. The corporation was organized March 7, 1887, with a capital stock of $1,000,000, all subscribed for and taken by eight corporators. The statute of Michigan (How. Ann. St. § 4077) requires that the articles of association state the amount of cash actually paid in and the cash value of any property "conveyed to the corporation cotemporaneously with its organization"; and accordingly the articles in this case state that no cash was paid in, and that mining property was conveyed and accepted, and its value fixed at $220,000, which would leave $780,000 unpaid by the original subscribers and incorporators. The shares were $25 each, making the amount of pro rata actual credit about $5.50 per share, and the unpaid portion $19.50. Subsequently it became necessary to raise money for the enterprise, and these original shareholders, at a meeting on April 15, 1887, resolved that each should contribute to a common pool two-fifths of his holdings of stock, denominated "treasury stock," to be sold at not less than $3 per share, "as fully paid and nonassessable stock," and of the proceeds three-fifths was to go into the treasury, and two-fifths to be paid to the contributors. This stock was to be issued to trustees named, and the resolution declared that it should "not be construed as mandatory so far as it authorizes the sale of said stock as fully paid, but that such trustees shall be at liberty" to sell any part as fully paid. On April 25, 1877, a scheme was proposed to have all stock made "nonassessable," but it was abandoned on advice of counsel, and the plan of April 15th was so far carried out that the contributions of stock were made (1,600 shares) by all the holders, and were placed on sale. It appears that the firm of Hoskins & Wambold, who were not stockholders, became agents of the corporation for selling this stock, under some arrangement by which their services were to be paid in shares of the treasury stock; that they sold some, purchased some, and received 6,000 shares for their services. In February, 1888, Wambold, of that firm, negotiated with the defendant, at Appleton, Wis., for the sale of 800 shares, at $3 per share, and the sale was agreed upon, 500 shares being then delivered and paid for, and for the remaining 300 shares were taken in July. The transaction was entirely with Wambold, who represented that the shares were fully paid, and the defendant supposed that Wambold was the owner. The shares, when received by the defendant, were issued in his name, were duly signed and sealed by the proper officers, and had written upon their face, in red ink, the words "Stock full paid and unassessable." No distinction was preserved in reference to any of the shares of this stock

which came through the hands of Hoskins & Wambold, and it does not appear whether the defendant's shares were, in fact, of direct sales for the corporation, or of stock which Hoskins & Wambold had purchased, or stock received for their compensation. The defendant had no information or knowledge of any of the arrangements prior to his purchase, except that the mining property was considered valuable when it could be developed; that his shares were full paid, and therefore no liability or risk was incurred beyond the investment in the shares. He was a nonresident, had no active part in the business, was only present at one meeting, but appears to have been elected a director for a time, without participation or knowledge of the affairs otherwise than by a formal presence. Until after the proceedings in the Michigan court, and immediately prior to this action, he had no information of any claim upon him of liability, and he never received any dividends or benefits from the corporation. If liable, the amount assessed is $12,000 and interest from February 15, 1894.

John Bottensek and E. E. Osborn, for plaintiff.
Humphrey Pierce and Quarles, Spence & Quarles, for defendant.

SEAMAN, District Judge (after stating the facts). I have reached a conclusion upon the merits of this case by which I am relieved from a consideration of the objection raised in behalf of the defendant that the plaintiff, as a receiver appointed by the court in the state of Michigan, cannot maintain his action in this forum, but is barred by the ruling in Booth v. Clark, 17 How. 322. See, also, High, Rec. § 239; Beach, Rec. § 680. Whether a distinction must be made in reference to the enforcement of liability against a stockholder under proceedings authorized by the statute of the state creating the corporation, and entering into the obligation which was assumed by the taking of stock, will not be passed upon in this opinion. See, for a distinction, Relfe v. Rundle, 103 U. S. 222; Railway Co. v. Gebhard, 109 U. S. 527, 3 Sup. Ct. 363; Parsons v. Insurance Co., 31 Fed. 305; Fry v. Insurance Co., Id. 197.

The defendant was not an original subscriber or stockholder of the corporation, and is not a direct purchaser or transferee under any original subscriber or stockholder. He was not a member at the time the arrangement was made out of which came the issue of stock in question. He had no actual knowledge of the facts which govern the issue of this stock, or any of the stock of the corporation; and there was nothing upon the face of the certificates from which notice could be inferred that the stock was not paid up, or of any infirmity in the issue. The question of his liability is not therefore within the ruling of the Upton Cases, 91 U. S. 45–72, and is not directly ruled by any decision of the supreme court cited on the argument or found in my research. The doctrine is well settled and strictly enforced that "the capital stock of an insolvent corporation is a trust fund for the payment of its debts; that the law implies a promise by the original subscribers of stock who do not pay for it in money or other property to pay for the same when called upon by creditors; and that a contract between themselves and the corporation that the stock shall be treated as fully paid and nonassessable, or otherwise limiting their liability therefor, is void as against creditors." Handley v. Stutz, 139 U. S. 417, and cases cited page 427, 11 Sup. Ct. 530. If the original stockholder transfers his unpaid stock, this

trust and subsequent liability follow it into the hands of any assignee who has notice or against whom notice can be implied. Webster v. Upton, 91 U. S. 65. But the decisions exempt the holder of such stock who purchases or takes as creditor bona fide, and clearly so in the absence of recitals or circumstances to give notice. Clark v. Bever, 139 U. S. 96, 11 Sup. Ct. 468; Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476; Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530; Sanger v. Upton, 91 U. S. 56; Steacy v. Railroad Co., 5 Dill. 348, Fed. Cas. No. 13,329; Phelan v. Hazard, 5 Dill. 45, Fed. Cas. No. 11,068; Foreman v. Bigelow, 4 Cliff. 508, Fed. Cas. No. 4,934; Young v. Iron Co., 65 Mich. 125, 31 N. W. 814; Brant v. Ehlen, 59 Md. 1; 1 Cook, Stock, Stockh. & Corp. Law, §§ 50, 257. The certificates of stock are not, strictly speaking, negotiable paper, but "they approximate to it as nearly as practicable" (Bank v. Lanier, 11 Wall. 377); and the cases above cited recognize that they possess so much of the attributes of negotiability that purchasers in the open market may accept as true the clear representation on their face that they are full paid. In Steacy v. Railroad Co., supra, Judge Dillon clearly points out this right of a bona fide purchaser to rely upon corporate representations thus made in the certificate, and that the creditors of a corporation have no equities superior to "the obvious equities which exist in favor of such a purchaser." Answering the claim that a purchaser of stock was bound to ascertain aliunde the truth of the representations, and must look to the records, the opinions say: "What more value is to be placed upon facts stated in the records than upon those stated under the corporate seal, by the authorized officers, as respects matters infra vires?" The decision in that case, in which Judge Caldwell concurred, exempts the bona fide transferee from liability under circumstances which do not raise equities in his favor of equal strength with those which are presented in favor of this defendant, but they are at least so far analogous that the rule and the reasons for its adoption there are clearly applicable here, and would discharge this defendant from liability unless the Michigan statute and the proceedings thereunder in the chancery court of that state (which will be presently considered) create a special liability.

The case at bar presents a feature in aid of the defendant which impresses me as entitled to great weight, in the conceded fact that this "treasury stock," out of which the defendant's purchase came, was produced by the deliberate surrender and contribution to the company by all the original subscribers of a portion of the original shares, which were taken by each to fill his subscription, and with direction that it be issued by the company, and placed on sale for its benefit, certified as full-paid stock. In view of that action, it is not necessary to carry the rule in favor of a bona fide transferee to the extent of relieving him from examination or from implied knowledge of the corporate records or proceedings. The stockholders have by this transaction applied upon these surrendered shares the general credit to which they were entitled on account of the property which they conveyed to the corporation as the only payment on their subscription, so far as it would be required to pay up the shares which

were thus segregated and sold; and an inspection of the record would justify the purchaser in the understanding that his shares were therefore cleared from liability. There is no proof here of the actual number of shares thus passed to bona fide purchasers, and clearly no proof of any deficiency in the payment of the defendant's shares after such application. The shares must therefore be regarded as full paid, according to their purport, and there is no common-law liability upon the holder for the corporate indebtedness.

The statutes of Michigan, which must govern in respect to this corporation, created under them, do not impose any additional liability. The supreme court of Michigan is clear and controlling authority for this construction of the statute. Young v. Iron Co., 65 Mich. 125, 31 N. W. 814, and the cases cited are directly in point. The rule held in Steacy v. Railroad Co. is there broadly adopted, and the opinion in Young v. Iron Co. expressly states that the defendants there sought to be charged as stockholders "must be treated as good-faith purchasers, for value, of stock, from the original holders of the same"; that, being bona fide transferees of shares of this stock, which purported upon its face, in clear and unmistakable terms, to be fully paid up and nonassessable, their shares thus acquired are exempt from any liability to further assessment, to pay the debts of the corporation. But the plaintiff invokes the case of Dynamite Co. v. Andrews, 97 Mich. 466, 56 N. W. 858, because it was an appeal from a judgment rendered against one of the stockholders of the American Iron Company in the same insolvency proceedings in the Michigan court upon which this action is founded. That case arose upon demurrer by a stockholder (Andrews) against whom liability was charged by the bill of complaint, and the opinion states that "the sole question presented by the record is the right to enforce an assessment by a personal judgment or decree against the stockholder." It was there enforced against one apparently a general stockholder, and the question of a bona fide holder of stock issued as full paid did not arise, and the opinion distinguishes it from Young v. Iron Co. upon that ground. The decision is not applicable. It fails to support the plaintiff's contention here, but, making the distinction as noted, is inferentially against it.

The further claim is made in behalf of the plaintiff that the decree in the Michigan court relative to the principal insolvency matter is, in some unexplained manner, conclusive upon this defendant, and establishes his liability, although it is conceded that he was not served as a party, and was not before that court, except as an integral part of the corporation. It is true, as held in Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, and in Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867, that, "in the absence of fraud, stockholders are bound by a decree against their corporation in respect to corporate matters, and such a decree is not open to collateral attack"; and that "the stockholder is to be deemed privy to the proceedings touching the body of which he is a member." But this rule applies only so far that he cannot question the findings of insolvency and the foundations of an assessment upon the stockholders. Upon any question of individual liability in which are involved his rights as a

bona fide holder, or in respect to his special holding of stock, a stockholder is entitled to his day in court, and cannot be bound by **any ex parte adjudication of liability. There is no adjudication affect**ing the defense interposed by this defendant, and he is not liable upon his shares of stock.

Findings may be prepared in accordance with this opinion, and judgment will be entered in favor of the defendant accordingly.