### PHILADELPHIA & R. COAL & IRON CO. v. DAUBE.

(Circuit Court, N. D. Illinois. January 11, 1896.)

GUARANTY—CONSTRUCTION OF CONTRACT—RECEIVERS.

A guaranty that a firm shall pay a corporation for all coal it may thereafter sell to such firm applies to sales of coal thereafter made to such firm through the receiver of the corporation, since the appointment of a receiver for property by a court of chancery does not transfer title to the property.

Assumpsit by the Philadelphia & Reading Coal & Iron Company against Louis Daube. There was a verdict for plaintiff.

Motion for judgment upon verdict rendered by the jury. The plaintiff is a corporation incorporated under the laws of Pennsylvania, and having a depot and yards in Chicago for the distribution and sale of coal. The firm of Daube & Rosenheim were copartners, and engaged in business at Chicago as coal dealers. The defendant, Louis Daube, who is the father of one of the copartners, on June 14, 1892, executed to the plaintiff a written instrument which recites that, "for the purpose of enabling Daube & Rosenheim to purchase coal on credit" from the plaintiff, he guaranties that said firm "shall promptly pay to it at the expiration of the time of credit given for all coal

it has sold or may hereafter sell to Daube & Rosenheim on credit, until this guaranty shall be revoked by notice in writing." It waives "any notice of the time or amount of purchases, or default of payment, or delays or extension of time of payment," consents that "such extensions may at any time be made," and states that his liability "shall cover any balance due or to become due, not exceeding $10,000." The declaration is upon this guaranty, and alleges purchases of coal thereunder from the plaintiff up to October, 1893, of which the balance unpaid is $4,123.23. It is undisputed that Daube & Rosenheim made continuous purchases from the plaintiff, upon the credit of this guaranty, up to February 20, 1893, and that payments had been made from time to time, leaving a balance then due of $900, according to plaintiff's contention, and a clear balance sheet, according to the contention of the defendant, as the result of certain statements rendered. Subsequent to February 20, 1893, and up to the close of the dealings in question. in October, 1893, the purchases were continued in the same manner, from the same yards, and upon printed orders addressed to the plaintiff; but it is asserted in behalf of the defendant that these subsequent purchases were made from the possession of a receivership over the property of the plaintiff,—the origin or character of which is entirely unexplained by the evidence,—and are therefore not within the guaranty. Although there was no direct contest regarding the amount of these later sales, there were questions of fact in reference to the application of payments, and the effect of statements rendered in fixing the amount due, which seemed to require determination by the verdict of the jury. Therefore the case was submitted to the jury for a special verdict, upon which answers were rendered, in effect, as follows: (1) That on February 20, 1893, there was due and unpaid to the plaintiff, for sales under this guaranty, the sum of $900; (2) that no purchases were made directly of the plaintiff after that date, but (3) that all subsequent purchases were made from receivers of the property and effects of plaintiff; (4) that the balance due from Daube & Rosenheim for all purchases both before and after February 20, 1893, is the sum of $4,123.23, which the plaintiff is entitled to recover against the defendant, if the court shall be of opinion that such recovery may be had notwithstanding the foregoing findings.

Ullman & Hacker, for plaintiff.

B. M. Shaffner, for defendant.

SEAMAN, District Judge (after stating the facts as above). The plaintiff claims judgment for the entire sum of $4,123.23, while the defendant insists that the finding of a receivership after February 20, 1893, limits the recovery to the sum of $900 then found due. In the consideration of the question thus presented, the only serious difficulty arises out of the indefiniteness of the finding of a receivership. It fails to show either the source of the appointment of a receiver, or the character or extent of authority or possession, and this defect is occasioned by an entire want of evidence to establish a more definite finding. The plaintiff, in its declaration, ignores the existence of any receivership, and, by its witnesses, asserts that all the sales and deliveries of coal after February 20, 1893, as well as before, were made by the plaintiff as continuous transactions, and, in guarded terms, they deny knowledge of any actual intervention by a receiver; and there is no appearance in plaintiff's books of account of any change or intervention in the transactions. On the other hand, the invoices or statements of account which were rendered to Daube & Rosenheim for transactions subsequent to February 20th bear stamped upon their face the words, "The Finance Company of Pennsylvania, Commercial Agents for the

Receiver of" ———; leaving the name of the plaintiff, as printed thereon, below this designation. It also appears that signs were placed upon the yards and wagons of the plaintiff, bearing the same designation; and Mr. Daube, of the purchasing firm, testifies in general terms that their purchases, after January 20th, were made from receivers. The verdict of the jury is in favor of the latter contention, and it is now urged on behalf of the defendant, although not suggested at the trial, that, in the absence of explanation by the plaintiff of the source and character of the receivership so found, it must be presumed to be one arising within the cognizance of this court, and that the plaintiff cannot maintain this action, at least in the present form. The question of practice—whether it was incumbent upon the plaintiff to explain the status of the purported receivership, and show that it did not interfere with its right to maintain the action in this jurisdiction, or whether a prima facie case was made by the plaintiff, and the burden was cast upon the defendant to show the facts as matter of defense—is not free from doubt, under the circumstances disclosed by the evidence. Presumptively the requisite information was at the command of the plaintiff. If it be assumed that the showing in the invoices of an apparent substitution of receivers required some explanation upon the part of the plaintiff, I think it could not be carried to the extent here urged, of raising a presumption that receivers were appointed within the territorial jurisdiction of the court; and it would be futile to so rule upon this motion, in the face of the statements of counsel for defendant, in the course of the trial and on the argument, that no record of such fact could be found, and of the undisputed assertion by plaintiff's counsel that the proceedings in respect thereto were foreign, and in the circuit court of the United States for the Eastern district of Pennsylvania. Therefore, notwithstanding the unsatisfactory state of the record, I am satisfied that the direction of judgment should be based upon the undoubted fact that the receivership found by the jury was not of local appointment or jurisdiction, and that the receivers must be regarded as having the powers only which can generally be conferred by courts of chancery. So considered, the case is relieved of any question whether the action can only be maintained in the name or for the use of the receiver, as the doctrine is well established in the United States courts that a receiver in chancery has no extraterritorial jurisdiction, but "his functions and powers, for the purposes of litigation, are limited to the courts of the state within which he was appointed." Booth v. Clark, 17 How. 322; Brigham v. Luddington, 12 Blatchf. 237, Fed. Cas. No. 1,874; Hazard v. Durant, 19 Fed. 471; High, Rec. § 239. An exception to this general rule is allowed in the case of special receivers of insolvent corporations, in whom powers are vested, for purposes of dissolution, in the nature of those possessed by an assignee, either by provision in the act of incorporation, or in a statute of the home state; but the exception in such instance is distinctly based upon affirmative showing of the statutory source of power and appoint-

ment, which is controlling upon the corporation, and then the functions are not those of chancery receivers. Relfe v. Rundle, 103 U. S. 222; American Nat. Bank v. National Benefit & Casualty Co., 70 Fed. 420; Rood v. Whorton, 67 Fed. 434. And a further exception was made in Ex parte Norwood, 3 Biss. 504, Fed. Cas. No. 10,364, by allowing a foreign receiver to intervene in bankruptcy, under the provisions of the national bankruptcy acts, which was suggested as exceptional in Booth v. Clark. But the instant case cannot be presumed to be within either of these exceptions, or taken as one out of the general rule, in the absence of evidence.

This reaches the vital point of the controversy,—the proposition argued on behalf of the defendant that the contract of guaranty is not operative for any sales made by the receivers. The doctrine is elementary that a guarantor or surety may stand upon the strict letter of his contract, and can only be held to liability for an indebtedness or cause arising within the clear terms of the obligation, and between the identical parties who are named in it. So it has been held that executors or administrators, continuing the business of their testator or intestate, could not have benefit of contracts of indemnity executed to the deceased as security for their transaction in the interest of the estate, although in the same line for which the sureties would have been originally liable to the deceased. Barker v. Parker, 1 Term R. 287; Fell, Guar. 175, 185. And the same rule is probably applicable to assignees in bankruptcy or insolvency. Id. 185. In such cases, however, the legal title and rights of property become vested in the representative; and there is a substitution of new parties, thereby working a discharge of surety obligations under the doctrine stated. The same result has been declared where there was a change in the members of a copartnership, and for substantial changes in articles of incorporation, including one which increased the capital stock of a bank. Bank v. Kingman, 16 Gray, 473. But the appointment of a receiver by a court of chancery does not operate to transfer title to the property, or to dissolve the corporation. Pringle v. Woolworth, 90 N. Y. 502; People v. Barnett, 91 Ill. 422. Its whole effect is clearly stated in Union Bank of Chicago v. Kansas City Bank, 136 U. S. 223, 236, 10 Sup. Ct. 1013, in which it is said in the opinion of the court, by Mr. Justice Gray:

"A receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his custody, as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title, or even the right of possession in the property."

Under this definition, which is supported by abundant authority, I can find no ground for holding a substitution of new parties or change of relationship which can relieve the guarantor from liability on the subsequent sales. It is true that the court has interposed its agency, through the receiver, in the control of the business, but the corporation retains its title, "and even the right of pos-

session in the property." Its corporate existence and interests are unaffected, and it has the same corporate benefit in all the subsequent transactions as were its right before the appointment; for it is the established rule respecting corporations that their managing officers and directors are at all times charged with the duty and liability of trustees for the creditors and all parties in interest. This change of management may well be likened to that which takes place when the stockholders, in honest effort for reform, elect a new board of directors, and new agencies are substituted in conducting the affairs, in which case, I presume, there would be no contention that existing contracts of the character in question would be released.

The nature of this agency, as an "arm of the court of equity," has, however, given rise to certain distinctions from the general rule applicable to agencies, and it is urged in defense here that material alteration in the relationship and rights of parties results from the following exceptions: (1) That, in an action by the receiver, set-off is not allowed in favor of the defendant for causes which accrue subsequent to the appointment. High, Rec. §§ 245–249. (2) That a receiver is not absolutely bound to adopt an executory contract which was entered into by the corporation before his appointment, but may be excused, by direction of the court, from continuing in its performance. Express Co. v. Railroad Co., 99 U. S. 191, 200; 20 Am. & Eng. Enc. Law, 375. It is my understanding that, while these exceptions have been adopted by the courts in many instances, it is only as rules of policy appropriate to the equitable jurisdiction; that they do not interfere with any of the common-law rights of contracting parties; that under the first-mentioned exception the guarantor would not be excluded from any defense or counterclaim which would be open under any circumstances to the principal debtors, in establishing the actual indebtedness under the contract covered by the guaranty; and the second exception only denies the purely equitable remedy of specific performance. I am unable to find in the relationship of a receiver any of the elements which interfere with the rule established for the protection of guarantors, and feel constrained to hold that all the sales were made as transactions of the plaintiff, notwithstanding the receivership. Neither in the elaborate citations submitted in the briefs of counsel, nor in the examination I have made, has any authority been found which would, in my opinion, justify an extension of that rule to the instant case. The rule is liberal and just, and should be strictly upheld, in the spirit which gave it adoption, but it should not be extended beyond the principles established. Therefore judgment will be entered against the defendant upon the verdict for $4,123.23.