W. T. RAWLEIGH MEDICAL COMPANY, APPELLANT, v. FRED BUNNING ET AL., APPELLEES.

FILED JANUARY 31, 1920. No. 20656.

1. Corporations: CHANGE OF NAME: ACTIONS. A contract with a corporation which subsequently changes its name, its identity remaining the same, may sue in the new name of the corporation. It may recover on any contract under the new name that it could have recovered on under the old name, even a contract of guaranty running to the corporation under its old name. The third paragraph of the syllabus in *Crane Co. v. Specht*, 39 Neb. 123, overruled.

2. ———: ———. A change of corporate name does not make a new corporation, but only gives the corporation a new name.

APPEAL from the district court for Dundy county: ERNEST B. PERRY, JUDGE. *Reversed.*

*Ratcliffe & Ratcliffe* and *John L. Rice,* for appellant.

*Hines & Hines* and *Lambe & Butler, contra.*

TIBBETS, C.

This is an action by the plaintiff appellant against the defendants, appellees, to recover from the defendants the sum of $500 on a contract of guaranty. Judgment for the defendants.

The petition originally filed in this case was entitled "The W. T. Rawleigh Medical Company, now The W. T. Rawleigh Company, a Corporation." Afterwards the plaintiff, on motion, was allowed to amend the title of the case by striking out "The W. T. Rawleigh Medical Company now." Plaintiff alleged that on or about the 30th day of March, 1915, it entered into a written contract with one Lee Huggans for the sale of certain commodities by the plaintiff under the name of The W. T. Rawleigh Medical Company to the said Lee Huggans, as he might order them at the wholesale list prices f. o. b. cars at Freeport, Illinois. It appears that the plaintiff had formerly sold goods to Lee Huggans, and that there was a balance due from Huggans to plaintiff of $641.96. There was an agreement in writing entered into between the plaintiff and defendants herein, attached to the agreement between plaintiff and Huggans, that for and in consideration of the extension of further time to Huggans in which to pay his account for goods previously bought by him from the company, and the further consideration of The W. T. Rawleigh Medical Company extending further credit to said Huggans, defendants jointly and severally agreed to guarantee the plaintiff company for the payment in full of the balance due the company on said account, and the payment in full of all goods thereafter purchased by said Huggans. There was also included in the contract of guaranty this provision: "And we further agree that, in any suit brought on this con-

tract of guaranty by the company, no other or further proof shall be required of it than to establish the amount or sums of money due and owing to it from the said second party, and when so proven shall be conclusive and binding upon us, and that any extension of time shall not release us from liability under this contract of guaranty.'' The plaintiff also alleges that on the 5th day of April, 1915, the corporate name of the plaintiff was changed, and now is The W. T. Rawleigh Company, and that it is a corporation doing business under the laws of the state of Illinois, and that the plaintiff is the same corporation which was heretofore known and named as ''The W. T. Rawleigh Medical Company,'' and that each and all of the contracts herein mentioned were entered into by the plaintiff under its former name.

The defendants' answer denies specifically that The W. T. Rawleigh Medical Company was a corporation, admits that they signed a certain contract of guaranty guaranteeing certain promises on the part of one Lee Huggans, and denies all other allegations contained in the petition not therein admitted. They allege that the contract of guaranty executed by them on or about March 30, 1915, covered only goods sold and delivered to the said Lee Huggans, and not to any other person; that the said Lee Huggans neither ordered nor received any goods from the party of the first part to the said contract, at any time after the date of signing said alleged contract. To this the plaintiff filed a reply and a general denial of the allegations contained in the answer, alleging that all the goods mentioned in the plaintiff's petition were ordered under and in pursuance of the said contract and guaranty mentioned in the said petition, and were made at the request of Lee Huggans and with his approval and consent, and that the goods were sold and delivered to the said Huggans under and by virtue of the contract of guaranty, and whatever person actually got the goods or ordered them did so in the name and as the agent of said Huggans and with Huggans' knowledge, consent and

approval and also of the defendants under the said con-
tract of guaranty, and that the defendants had full knowl-
edge of the manner and for whom the goods were order-
ed and of the entire transaction, and that they knew also
that the plaintiff was selling and delivering and extending
credit for said goods under said contract of guaranty,
and made no objection thereto, and in no way disclaimed
or notified the plaintiff that said goods were being re-
ceived by any other person than the said Huggans, and
that they had full knowledge of all the facts, circum-
stances and relation of the parties, and thereby are
estopped from setting up, asserting or claiming that Lee
Huggans did not order said goods or receive said goods,
or that the same were not ordered, sold, delivered and
received, and credit extended therefor by reason of the
contract of guaranty.

The 'plaintiff introduced in evidence at the trial its
written contract with Huggans, and also the guaranty of
defendants.   It also introduced testimony to show that
the goods were ordered by Huggans, or at least ordered
in writing by a person who signed the name ''Lee Hug-
gans;'' that the goods were delivered to Huggans f. o.
b. Freeport, Illinois.   Plaintiff also attempted to show
that there was a balance yet due in payment of the goods
furnished under the contract and guaranty.   Upon the
conclusion of the plaintiff's testimony, a request was
made by the attorneys for the defendants by a written
motion to dismiss said action, and for a judgment for
the defendants, for the reason that the testimony and
the evidence were insufficient to support a verdict and
judgment for the plaintiff.   The court sustained the
motion, and discharged the jury from further attendance
upon said action, and rendered judgment for the defend-
ants, from which the plaintiff appeals.

The main issue appears to be that the change of name
of the corporation after the contract was entered into
prevented the plaintiff from maintaining this action
against the defendants under the contract of guaranty.

In this case the rulings of the district court complained of must have been principally based upon the decision of this court in the case of *Crane Co. v. Specht,* 39 Neb. 123, and, if we adhere to the rule as laid down in that case, there would be no question but that our duty in the present case would be to affirm the judgment of the district court; but we are unable to adopt that rule, which is: "Where S. guaranteed the account of L. with the C. Bros. Mfg. Co., a corporation, for goods supplied and to be furnished by it to L., and the corporation afterward changed its name to Crane Company, and after the change furnished goods to L., *held,* in an action by the Crane Company on the guaranty to recover the value of such goods, that S. was not bound." The rule is too broad and too universal in its application, and contrary to a large majority of the best considered decisions. The facts in the present case are similar in all essential particulars to the case of *Crane Co. v. Specht, supra,* and involve the same question.

. In the case of *Springfield Lighting Co. v. Hobart,* 68 S. W. 942 (98 Mo. App. 227) it was held: "Where a surety executed a bond, conditioned that his principal would faithfully fulfil a certain contract whereby it agreed to furnish power for an electric light company to operate its apparatus, and afterwards the electric light company was consolidated with another company, and a new corporation formed, the surety continued liable to the new corporation for the performance of the contract." The questions arising therein were exhaustively discussed and numerous authorities cited supporting the conclusion arrived at.

In the case of *Rawleigh Co. v. Grigg,* 191 S. W. (Mo. App.) 1019, a case similar to the present one, the court held: "Where a contract sued on by a corporation was made with it before its name was changed, it is sufficient for it to allege no more than that it entered into the contract by its former corporate name, even though the contract be one of guaranty. A change of corporate name

does not make a new corporation, but only gives the corporation a new name.'' And, in the opinion, the court in its criticism of the case of *Crane Co. v. Specht, supra,* said: ''We are cited to the case of *Crane Co. v. Specht,* 39 Neb. 123, 42 Am. St. Rep. 562, as holding that a corporation taking a contract of guaranty for the payment of goods to be sold and thereafter changing its corporate name cannot hold the guarantor for goods sold by the new corporation. This is carrying the doctrine that contracts of guaranty will be strictly construed to the extreme limit, and appears to overlook the fact that a change of name does not make a new corporation, but only gives it a new name. This last case is cited with approval in *Lester Piano Co. v. Romney,* 41 Utah, 436; but this case is based on the holding that there was a change in the corporation itself. A contrary doctrine, and one more consonant with reason, is held in the Alabama case (*Ready & Banks v. Mayor,* 6 Ala. 327), and in *Philadelphia & Reading Coal & Iron Co. v. Daube,* 71 Fed. 583; *City Nat. Bank v. Phelps,* 97 N. Y. 44, 49 Am. Rep., 513; *People v. Backus,* 117 N. Y. 196. See, also, note to *Lyon & Co. v. Plum,* 14 L. R. A. n. s. 1231.''

In the case of *Miller & Bro. v. Mummert,* 196 S. W. (Tex. Civ. App.) 270, the court held: ''An authorized change in the name of a corporation has no effect on its indentity, nor on its rights and obligations.''

The above cases are amply sustained in 10 Cyc. 155; 3 Thompson, Corporations (2d. ed.) sec. 3191; *New York African Society for Mutual Relief v. Varick,* 13 Johns. (N. Y.) 38; *Medway Cotton Manufactory v. Adams,* 10 Mass. *360; *Philadelphia & Reading Coal & Iron Co. v. Daube,* 71 Fed. 583; *City Nat. Bank v. Phelps,* 97 N. Y. 44; *Ready & Banks v. Mayor,* 6 Ala. 327; *Philapy v. Aukerman-Bright Lumber Co.,* 56 Ind. App. 266; *Miles Lamp Chimney Co. v. Erie Fire Ins. Co.,* 164 Ind. 181; *People v. Backus,* 117 N. Y. 196. Additional authorities might be cited sustaining the rule adopted by the court in the case of *Rawleigh Co. v. Grigg, supra.*

There is also a line of authorities that would seem to sustain the rule adopted in the case of *Crane Co. v. Specht, supra.* In the case of *Lamm & Co. v. Colcord,* 22 Okla. 493, 19 L. R. A. n. s. 901, the Nebraska case was cited and relied upon, at least as far as the introduction of evidence showing that the indentity of the parties was the same, was concerned. It was also held in the case of *Coan v. Patridge,* 98 N. Y. Supp. 570: "A guaranty of the payment of all moneys to become due from a merchant for merchandise did not extend to the liability of a firm composed of the merchant and one whom he subsequently took into partnership with him." The same was held in the case of *Bill v. Barker,* 16 Gray (Mass.) 62.

In the case of *Lyon & Co. v. Plum,* 75 N. J. Law, 883, 14 L. R. A. n. s. 1231, it was held: "A guaranty to a firm of a customer's running account is not operative as to credit extended after the admission into such firm of a new member, in the absence of anything to show that such change in the firm was originally contemplated by the guarantor." This rule was adhered to in the case of *Cosgrave Brewing & Malting Co. v. Starrs,* 5 Ont. (Canada) 189; *Penoyer v. Watson,* 16 Johns. (N. Y.) *100. Other decisions to the same effect might be cited, but an investigation of those decisions will disclose that almost universally the guaranty was running to a partnership, and not to a corporation.

The distinction between a partnership and a corporation is fully defined in 10 Cyc. 146, which reads as follows: "The essential distinctions between a corporation and a partnership are: (1) A corporation possesses 'perpetual succession,' while a partnership does not; that is to say, the members of a corporation (and this applies to an unincorporated joint-stock company) may freely transfer their shares to outside persons, except so far as restrained from so doing by the terms of the charter or other constituent instrument, and thus introduce new members into the corporation in their stead, while in case

of a partnership if a member retires from the firm or dies it works a dissolution. (2) In the case of a corporation the members are not agents for the incorporated body, unless specially clothed with power as such. The shareholders act through a board which they create and cannot in general bind the corporation by their individual action, although all of them concur. Whereas in a general partnership each member is an agent for the partnership with respect to all matters within the scope of the partnership business. (3) The members of a general partnership are individually liable for the debts of the firm, jointly and severally; whereas, subject to statutory and special qualifications hereafter explained in this article, the members of a corporation are not so liable."

In a partnership the personal equation is taken into consideration, the character, business acumen, industry, skill and financial standing of the members composing the partnership, the success of the enterprise depending upon the individual efforts of the members. If a member retires from the firm or dies, the partnership is dissolved. If a new member is taken into the partnership, it may add to or detract from its success. In a partnership generally each member is an agent for the partnership; in a corporation, if a stockholder and officer dies or disposes of his stock, it does not work a dissolution. As stated, the stockholders work through a board having in general full control of the conduct of the business. Finally, a change in the partnership works a dissolution. But in a corporation a change in the stockholders' board of directors and officers, if made frequently, works no change in the corporation as far as the liabilities, contracts or assets of the corporation are concerned. This is an age of corporations; the preceding statements of the law governing corporations are of general knowledge.

A corporation is a distinct entity; the change of name, amount of stock—increased or diminished—extension or contraction of business, does not, under ordinary circumstances, change its liabilities or contracts. These facts

are legal facts, and should have been known to the defendants when they entered into the contract of guaranty. That "guarantors are favorites of the law" is true, but that rule cannot be extended as claimed and insisted upon by the defendants herein. The corporation is the same with which they made their contract, only the name is changed; and the plaintiff, as disclosed by the record, had a right, and it was its duty, to bring the action in the changed name, and the rulings of the trial court based upon the decision in *Crane Co. v. Specht, supra,* were erroneous.

In the trial of this case it would seem that the defense was based more upon excluding such testimony introduced by plaintiff as was necessary to make its case than in meeting the case by introducing evidence of their own, and in fact they must have relied upon the case of *Crane Co. v. Specht, supra.* We find, upon an examination of the record, that a great many of the answers of the witness J. L. Jackson were by the court excluded wrongfully. The record does show, however, that evidence was offered to show that the plaintiff is a corporation, that it made the contract with Lee Huggans, and the contract of the guarantors attached thereto; that said contract and the guaranty running therewith were entered into by the plaintiff under the name of The W. T. Rawleigh Medical Company, an Illinois corporation. The contract was purported to be signed by Lee Huggans, and the guaranty attached thereto by the defendants. On the 5th day of April, 1915, the name of the plaintiff was legally changed to The W. T. Rawleigh Company, but the place of doing business, the character of the business and the indentity of the corporation remained the same. The agreement provided that the sales from plaintiff to Huggans should be f. o. b. cars at Freeport, Illinois, or, at plaintiff's option, at any other regular place of shipment. Plaintiff introduced in evidence invoices and bills of lading for goods shipped to Lee Huggans, on which payments were made and acknowledgment of indebtedness

signed "Lee Huggans." Defendants contend that Lee Huggans never signed the contract and never purchased goods from plaintiff. Sanford E. Huggans, who was called as a witness for plaintiff, testified that he was the father of Lee Huggans; that he commenced to sell plaintiff's goods in 1913, carrying on the business in his son's name as the plaintiff would not make a contract with him. as he was too old; that on all letters to the plaintiff relating to the goods purchased the signature was made by him, but he signed the same "Lee Huggans;" that he received the goods billed to Lee Huggans by plain tiff, sold them, and remitted such money as was paid for them in the name of Lee Huggans. He further testified that the guarantors, with the possible exception of Walter Burt, knew, prior to signing the guaranty, that witness and Lee Huggans, his son, were conducting the business. The court excluded all questions that tended to establish agency, and all explanations witness may have made to the guarantors. There was nothing in the record to indicate that the plaintiff knew that the father, and not the son, was conducting the business, and when plaintiff consigned goods ordered in the name of Lee Huggans f. o. b. cars. at Freeport, Illinois, to Lee Huggans, from that moment Lee Huggans became the owner and possessor of the goods, and they were sold and delivered by virtue of the. contract with Lee Huggans and the guaranty of defendants. It was not the duty of the plaintiff to ascertain whether Lee Huggans sold the goods himself or through an agent. The guarantors were to pay plaintiff for such goods as Huggans purchased.

We think the court erred in excluding the testimony of agency and knowledge of defendants as to the arrangement between father and son, of which the defendants had knowledge; that the court erred in rendering judgment without the interposition of a jury.

For the reasons here given, we recommend that the third paragraph of the syllabus in the case of *Crane Co. v. Specht,* 39 Neb. 123, be overruled, and that the judg-

ment of the district court be reversed and the cause remanded for further proceedings.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings, and this opinion is adopted by and made the opinion of the court.

REVERSED.